87 F.3d 1325
 1996-2 Trade Cases P 71,466
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Mona A. VERDUCCI, M.D., Plaintiff-Appellant,
v.
SONOMA VALLEY HOSPITAL DISTRICT, et. al, Defendant-Appellee.
Mona A. VERDUCCI, M.D., Plaintiff-Appellee,
v.
SONOMA VALLEY HOSPITAL DISTRICT, et. al, Defendant-Appellant.
 No. 95-15067.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 8, 1996.
Decided June 18, 1996.
 
 1
 Before: BROWNING and NOONAN, Circuit Judges, and MERHIGE, District Judge*.
 
 
 2
 MEMORANDUM**
 
 PROCEEDINGS BELOW
 
 3
 Dr. Mona Verducci, Plaintiff-Appellant, filed a complaint in the district court for the Northern District of California on September 16, 1991, alleging that Defendant-Appellants, Sonoma Valley Hospital District and certain named defendants, conspired to run her out of business in violation of § 1 and § 2 of the Sherman Act. Verducci filed a second amended complaint on July 20, 1992 adding certain named defendants and causes of action alleging violations of constitutional rights under § 1983.
 
 
 4
 On August 9, 1993, the district court granted the Hospital's motion for summary judgment on Verducci's antitrust claims. The district court granted the Hospital's motion for summary judgment on Verducci's free speech and equal protection claims and on her claim that she was deprived of a liberty interest and property interest by the Hospital's peer review system on August 19, 1994. It denied summary judgment for the defendants in part, finding a triable issue of fact as to whether individuals at the Hospital conspired to deprive her of her constitutional rights in the recruitment of two other obstetricians.
 
 
 5
 On December 6, 1994, the district court granted the Hospital's motion for summary judgment on that claim, finding that as a quasi-legislative body, the Hospital's conformance with the Brown Act sufficed to provide Verducci with due process in the recruitment of the two other obstetricians. The district court dismissed Verducci's action with prejudice. Verducci has timely appealed the district court's dismissal.
 
 
 6
 The Hospital moved for attorneys' fees against Verducci under the Health Care Quality Control Act of 1986, 42 U.S.C. § 11113, and under 42 U.S.C. § 1988. The district court denied attorneys' fees on both grounds finding that Verducci's claims were neither frivolous nor unreasonable. The Hospital appeals the district court's denial of fees.
 
 FACTS
 
 7
 Mona Verducci is an obstetrician-gynecologist who has had staff privileges at Sonoma Valley Hospital since 1987. Sonoma Valley Hospital District owns and operates Sonoma Valley Hospital, which is located in Sonoma, California. The other Defendants are physicians at Sonoma Valley Hospital. The Defendants will be referred to collectively as "the Hospital."
 
 
 8
 In 1990, the Hospital recruited two OB/GYNs, Dr. Cohn and Dr. McCord, to come to Sonoma. At this time, Verducci applied to be reappointed to the Hospital staff. Verducci had received a number of complaints from the nursing staff and a poor review by the American College of Obstetrics and Gynecology, and the Hospital arranged for her to be reviewed by the California Medical Association. The CMA conducted two reviews, both of which were critical of Verducci's practice, although the second review, which was conducted at Verducci's request, was less critical.
 
 
 9
 In March 1991, the Medical Executive Committee recommended that Verducci be reappointed and her privileges be renewed, but that she be required to consult with another physician for some obstetric patients. Verducci challenged these findings and requested a hearing before the Hospital's Judicial Review Committee (JRC). Pending the completion of this process, Verducci retained full and unrestricted staff privileges.
 
 
 10
 On April 28, 1992, the JRC upheld the consultation requirement placed on Verducci for patients diagnosed as potential vaginal breech deliveries, finding that Verducci lacked the skill to perform them. Verducci appealed this decision to the Board of Directors, but the Board affirmed it in September 1993. Verducci applied for a writ of administrative mandamus from the California Superior Court to overturn the Board's decision. That court denied her petition. Verducci subsequently filed this suit in the district court for the Northern District of California.
 
 STANDARD OF REVIEW
 
 11
 This court reviews the district court's grant of summary judgment for the Hospital de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Id.
 
 ANALYSIS
 I. VERDUCCI'S ANTITRUST CLAIMS
 
 12
 Verducci claims that the Hospital has attempted to drive her out of business in order to hamper competition by recruiting two other obstetricians to the area and limiting her staff privileges. She argues that the Hospital's actions have violated both § 1 and § 2 of the Sherman Act.
 
 
 13
 A. Verducci's Claims Should Be Analyzed Under the Rule of Reason.
 
 
 14
 The district court correctly analyzed Verducci's claims under the rule of reason. Verducci's allegations are quite similar to those leveled in Austin v. McNamara, 979 F.2d 728, 738 (9th Cir.1992), in which this court held that the rule of reason was the appropriate standard to evaluate a doctor's claims that attacks on his professional judgment and ability by other members of the medical staff, other doctors' refusal to cover for him, and the hospital's actions to suspend his staff privileges were part of a conspiracy in restraint of trade. Even if these acts "were somehow intended to lead to a denial of staff privileges, a per se approach still would not be appropriate." Id.
 
 
 15
 Verducci's efforts to characterize the Hospital's actions as a group boycott do not change this analysis: only those boycotts or refusals to deal that almost always tend to be predominately anticompetitive are per se illegal. Bhan v. NME Hospitals, Inc., 929 F.2d 1404, 1411-12 (9th Cir.) cert. denied, 502 U.S. 994 (1991). The Hospital's actions are not of that kind. A hospital has the right to monitor the performance of the doctors on its staff and to limit their privileges if they are not providing quality care to patients. The district court was correct to evaluate Verducci's claims under the rule of reason.
 
 
 16
 Under the rule of reason, Verducci must establish 1) an agreement, conspiracy, or combination among two or more persons; 2) that is intended to harm or unreasonably restrain competition; and 3) that actually causes injury to competition within the field of commerce in which the claimant is engaged, beyond the effect on the claimant. Austin, 979 F.2d at 738.
 
 
 17
 B. The Relevant Markets.
 
 
 18
 Verducci has the burden of proving the relevant market and showing the deleterious effects on competition within that market. The relevant market has two components: the geographic market and the service market. Generally, the definition of a market is a question of fact for the jury. Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd., 924 F.2d 1484, 1489 (9th Cir.1991).
 
 
 19
 1. Geographic Market.
 
 
 20
 "A geographic market is an area of effective competition where buyers can turn for alternate sources of supply." Id. at 1490 (internal quotations omitted). Verducci contends there is a genuine issue of material fact as to the scope of the geographic market because she came forth with evidence that the relevant geographic market was that of hospitals in Sonoma Valley proper rather than hospitals within a twenty-five mile radius of Sonoma.
 
 
 21
 The district court was correct to find that there was no material dispute of fact that the relevant geographic market was hospitals within a twenty-five mile radius. The Hospital produced evidence that during the last seven years the Hospital saw less than 50% of Sonoma residents seeking OB/GYN services; more than 50% of Sonoma residents sought OB/GYN care at six other hospitals within 25 miles of Sonoma. Verducci's evidence that travelling outside of Sonoma to a hospital is unsafe does not contradict the fact that consumers of health care who live in Sonoma do indeed travel to hospitals outside of Sonoma. Because the Hospital in fact competes for business with hospitals within twenty-five miles of it, there is no material dispute of fact that that is the relevant geographic market.
 
 
 22
 2. Product market.
 
 
 23
 Verducci argues that the district court also erred in defining the product market as the provision of OB/GYN services by female physicians. Verducci argues that the district court should have found that there was a relevant submarket of female OB/GYNs who provide gynecological services to Medi-Cal patients, perform abortions, or use natural childbirth methods. Within such a submarket, she contends that the Hospital's actions injured competition.
 
 
 24
 A product market includes the pool of goods and services that are reasonably interchangeable for one another, Oltz v. St. Peter's Community Hosp., 861 F.2d 1440, 1446 (9th Cir.1988), such that a monopolist in that market could profit by raising prices. Morgan, Strand, 924 F.2d at 1489. Even if Verducci is correct that the relevant market is the submarket of female OB/GYNs who provide gynecological services to Medi-Cal patients, perform abortions, or use natural childbirth methods, Verducci has failed to show that the Hospital's actions would injure competition. The Hospital produced evidence that abortion services and gynecological services to Medi-Cal patients were widely available within the relevant geographic market. Drs. Cohn and McCord both stated that they performed services for Medi-Cal patients. Verducci's only evidence to the contrary is her own assertion that she is the only OB/GYN at Sonoma Valley Hospital who does, and two patient affidavits that affirm that statement. These three declarations do not create an issue of material because they are not based on personal knowledge. See Fed.R.Civ.P. 56(e).
 
 
 25
 Verducci also fails to establish a submarket for natural childbirth methods in which the Hospital's actions would injure competition. Cohn and McCord both testified that they perform childbirth without the use of drugs. Verducci does not provide any evidence to the contrary besides her own affidavit that natural childbirth is not widely available within the relevant geographic market.
 
 
 26
 3. Within the Relevant Market Verducci Failed to Show any
 
 
 27
 Injury to Competition.
 
 
 28
 Within the relevant geographic market there are 18 female OB/GYNs in addition to Verducci. We agree with the District Court's conclusion that even if the Hospital and doctors at Sonoma Valley Hospital conspired to run Verducci out of business, Verducci failed to establish that such efforts would have a deleterious effect on competition within that market.
 
 C. Verducci's § 2 Claim
 
 29
 Verducci claims that the Hospital and several physicians combined and conspired to drive her out of business in an attempt to monopolize the market for OB/GYN services in violation of § 2 of the Sherman Act. In order to establish a claim of attempted monopolization, Verducci must show: "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." Spectrum Sports, Inc. v. McQuillan, 113 S.Ct. 884, 890-91 (1993). The District Court correctly granted summary judgment for the Hospital because there is no dispute of material fact that there is no dangerous probability of the Hospital achieving monopoly power.
 
 
 30
 The Hospital introduced evidence that only 26.5% to 49.3% of residents of the town of Sonoma who have given birth have done so at the Hospital. That means that from 50% to 73% of women residing in Sonoma who have had babies have given birth at other hospitals. Verducci does not dispute this evidence. She merely argues that the Hospital's evidence incorrectly assumes a geographic market of hospitals within 25 miles of Sonoma. Because we agree there is no dispute of material fact that the geographic market was the 25 mile area surrounding Sonoma and because the Hospital has only a small share of the market for OB/GYN services, there can be no dangerous probability that the Hospital could monopolize the market for OB/GYN services by eliminating one physician.
 
 II. VERDUCCI'S SECTION 1983 CLAIMS
 
 31
 A. The District Court Was Correct to Grant Summary Judgment on Verducci's § 1983 Procedural Due Process Claims in which She Claimed She Was Denied a Protected Property Interest Without Due Process.
 
 
 32
 Verducci argues that the Hospital deprived her of a protected property interest without due process in two ways. First, she argues that she was not afforded due process in the peer review process that resulted in restrictions being placed on her practice. Second, she argues that the Hospital's recruitment of the two new OB/GYNs deprived her of a protected property interest without due process.
 
 
 33
 1. Verducci was afforded due process in the peer review process.
 
 
 34
 Verducci's argues that she was deprived of due process by the Hospital's peer review process because the hospital delayed granting her a hearing and rendering a decision. She also argues that the restriction placed on her practice--the requirement that she consult with another physician when handling a possible breach delivery--was excessive.
 
 
 35
 The parties do not dispute that Verducci's medical staff privileges constitute a protected property interest. Determining whether due process has been afforded involves a balancing of three factors set out in Matthews v. Eldridge, 424 U.S. 319 (1979): First, the importance of the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of a property interest through the procedures used and the probable value of additional safeguards; third, the government's interest, including any monetary or efficiency costs associated with increased procedural safeguards. Id. at 335.
 
 
 36
 Verducci suffered no deprivation of a protected property interest due to the delay in the peer review process: The Hospital placed no restrictions on Verducci's practice until after the Board rendered its final decision. Because the delay did not deprive Verducci of a protected property interest, the Hospital did not violate the Due Process Clause.
 
 
 37
 Verducci also argues that the restriction placed on her practice was excessive and that the testimony at the hearing showed that her performance was at the same level of other doctors upon whom no restrictions were placed. This argument attacks the outcome of the proceedings, not their fairness. The hearing itself afforded Verducci adequate due process. She had notice of the charges against her, had a hearing at which she was represented by counsel, had the opportunity to present and cross-examine witnesses, and had the opportunity to engage in discovery. Given the Hospital's very real interest in the competency of its physicians, the hearing provided Verducci with adequate due process. See Stretten v. Wadsworth Veterans Hosp., 537 F.2d 361, 368 (9th Cir.1976) (finding that the importance of competent physicians to patient survival "weighs in favor of due process procedures which will minimize the risk of the continued employment of an incompetent doctor").
 
 
 38
 2. The Hospital's recruitment of Drs. Cohn and McCord
 
 
 39
 comported with the requirements of the Brown Act.
 
 
 40
 Both parties agree that with regard to the recruitment of Drs. Cohn and McCord, because the Hospital is a quasi legislative body, the only due process to which Verducci was entitled was the Hospital's compliance with California's Brown Act open meeting requirement. The Brown Act provides that "It is the intent of the law that [legislative bodies'] actions be taken openly and that their deliberations be conducted openly." Cal. Gov't Code § 54950. Verducci alleges that the Hospital violated the Brown Act in two ways.
 
 
 41
 First, Verducci contends that she did not receive prior notice of the meetings of the Board at which the Board discussed and voted on the recruitment of the other OB/GYNs. The Brown Act, however, does not require that Verducci receive personal notification. It merely requires that the agendas be posted in a location accessible to the public 72 hours prior to a meeting. § 54954.2. It is undisputed that the agendas for these meetings were posted in publicly accessible locations--in the hospital cafeteria and behind the front desk in the lobby.
 
 
 42
 Second, Verducci argues that the Hospital violated the Brown Act by negotiating the recruitment package for Drs. Cohn and McCord at closed-door meetings. The Brown Act requires that "[a]ll meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency." § 54953. The negotiations with Drs. Brown and McCord were not "meetings of a legislative body" as defined by the Brown Act, however, and thus they need not have been open to the public. The Brown Act defines "legislative body" to include:
 
 
 43
 any advisory commission, advisory committee or advisory body of a local agency, ... [but] as defined in this section does not include a committee composed solely of members of the governing body of a local agency which are less than a quorum of such governing body.
 
 
 44
 § 54952.3. The Board of the Hospital consisted of five members. Because there was only one board member in attendance at the negotiations, there was not a quorum of Board members present. The Brown Act, therefore, did not require these meetings to be open to the public.
 
 
 45
 Because the Hospital complied with the Brown Act requirements, we conclude that the Hospital's recruitment of Drs. Cohn and McCord did not violate Verducci's right to due process.
 
 
 46
 B. The District Court Was Correct to Dismiss Verducci's § 1983 Procedural Due Process Claim in which She Claimed She Was Denied a Protected Liberty Interest.
 
 
 47
 Verducci argues that the district court erred in granting summary judgment on her claim that the Hospital's actions in limiting her staff privileges denied her a protected liberty interest without due process.
 
 
 48
 The Fourteenth Amendment liberty interest encompasses an individual's freedom to work and earn a living. When an employee is dismissed for reasons that might seriously damage her reputation in the community, she is entitled to notice and a hearing in order to clear her name. Bollow v. Federal Reserve Bank of San Francisco, 650 F.2d 1093, 1100 (9th Cir.1981), cert. denied, 455 U.S. 948 (1982). The Hospital limited Verducci's staff privileges at the hospital because it considered her incompetent to perform certain procedures and because Verducci could not get along with other members of the medical and nursing staff. In Bollow, 650 F.2d at 1101, and in Stretten v. Wadsworth Veterans Hosp., 537 F.2d 361, 366 (9th Cir.1976), this court found that charges of incompetence and an inability to get along with coworkers were insufficient to give rise to a liberty due process claim. Accusations must reach the level of moral turpitude before a liberty interest comes into play. Stretten, 537 F.2d at 366. The Hospital's charges against Verducci simply do not reach that level, and thus, Verducci was not deprived of a protected liberty interest.
 
 
 49
 C. The District Court Was Correct to Grant Summary Judgment on Verducci's § 1983 Equal Protection Claim.
 
 
 50
 Verducci's Second Amended Complaint alleges that the Hospital deprived her of
 
 
 51
 the right to equal protection under the laws of the United States to be treated no differently than similarly situated medical practitioners by not following its own established guidelines for providing fair peer review.
 
 
 52
 The flaw with this cause of action is that Verducci failed to allege that she was treated differently by the Hospital because she belonged to a particular group. Thus, she has failed to allege a valid equal protection claim. See San Antonio School Dist. v. Rodriguez, 411 U.S. 1, 59 (1973) ("The function of the Equal Protection Clause ... is simply to measure the validity of classifications created by state laws") (Stewart, J. concurring).
 
 
 53
 D. The District Court Was Correct to Grant Summary Judgment on Verducci's § 1983 First Amendment Claim.
 
 
 54
 Verducci argues that she engaged in protected speech critical of the way the Hospital was run and that the Hospital took adverse action against her as a result. The district court granted summary judgment for the Hospital on the basis that Verducci presented no evidence that she had made such statements and was retaliated against on that basis. Verducci points to footnote 14 in her opposition to summary judgment where she references pages in the Administrative Record that she contends support her assertion that she made these statements. She also contends her declaration in support of her opposition to summary judgment also shows she made such statements.
 
 
 55
 Although Verducci does present evidence that she made certain statements critical of the way in which the hospital was run, she does not provide any evidence indicating that anyone retaliated against her for making these comments. Roth v. Veterans Admin., 856 F.2d 1401, 1404 (9th Cir.1988) (holding that hospital's retaliation against employee for his criticisms of hospital's wastefulness, mismanagement, violations of regulations, and incompetence was a clearly established violation of employee's First Amendment rights). Indeed, she testified at the administrative hearing that after she complained about the inadequacy of the nursing staff, the Hospital hired an obstetric head nurse who could train the other nurses. Because Verducci presents no evidence that the Hospital took any adverse action against her in retaliation for her critical statements, we conclude the district court was correct in granting summary judgment for the Hospital on this issue.
 
 
 56
 III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT DENIED VERDUCCI LEAVE TO FILE A THIRD AMENDED COMPLAINT.
 
 
 57
 Verducci contends that the district court abused its discretion in denying her motion to amend her complaint for the third time to make clear that her Equal Protection claim was premised on gender discrimination. Verducci moved to amend on May 4, 1994, six months before trial, and one week before the defendants were scheduled to move for summary judgment on Verducci's § 1983 claims (of which this claim was one). The district court denied Verducci's motion to amend on the grounds that it would cause undue delay and prejudice to the defendants.
 
 
 58
 This court reviews a district court's denial of a motion to amend for abuse of discretion, but in light of the strong policy in favor of liberal amendment. Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 798 (9th Cir.1991). However, "[a]bsent a definite and firm conviction that the district court committed a clear error of judgment, we will not disturb the district court's decision." Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir.1990). A district court's discretion to deny leave to amend is particularly strong where the plaintiff has already amended her complaint. Id.
 
 
 59
 This court uses a five-factor test to determine the propriety of a motion for leave to amend: 1) bad faith; 2) undue delay; 3) prejudice to the opposing party; 4) futility of amendment; and 5) whether plaintiff has previously amended her complaint. Id. An examination of these factors supports the district court's determination to deny Verducci leave to amend. It appears that Verducci knew for many months before she moved to amend her complaint for the third time that her equal protection claim was premised on gender discrimination. Verducci testified in November 1993 (seven months before she moved to amend) that she believed that many of her problems at the hospital occurred because she is a woman. Verducci presents no reason for this seven-month delay. Moreover, the district court did not commit clear error when it decided this delay would cause prejudice to the Hospital--discovery was near an end, and the Hospital was about to file its motion for summary judgment. Because Verducci did not present a reason for her delay and because of the likelihood of prejudice to the Hospital, we conclude the district court did not commit clear error in denying Verducci leave to amend her complaint for the third time. See Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387-88 (9th Cir.1990) (denying motion to amend complaint to add new legal theories because of prejudice to defendant since plaintiff had been in possession of facts giving rise to new legal theory for 8 months).
 
 
 60
 IV. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY REFUSING TO ASSESS ATTORNEYS' FEES AGAINST VERDUCCI UNDER THE HEALTH CARE QUALITY IMPROVEMENT ACT.
 
 
 61
 The Hospital seeks attorney's fees against Verducci under the Health Care Quality Improvement Act of 1986, 42 U.S.C. § 11113. Under § 11113, a defendant in a lawsuit that involves the issue of professional peer review may recover the cost of defending against the suit if certain conditions are met. Because the Hospital's actions were taken with the reasonable belief that they would further the quality of health care, the peer review process afforded Verducci due process, and the Hospital has substantially prevailed in this action, the Hospital would be entitled to recover the cost of defending the suit if Verducci's claims or conduct during the course of litigation were "frivolous, unreasonable, without foundation, or in bad faith." Smith v. Ricks, 31 F.3d 1478, 1487 (9th Cir.1994). The district court found that the Hospital was not entitled to fees because, although "some of Verducci's claims were groundless," they were not unreasonable or frivolous and were, "as a whole, ... at least reasonable."
 
 
 62
 This court reviews a district court's decision not to impose attorney's fees and costs under the HCQIA for an abuse of discretion. Smith, 31 F.3d at 1487. The Hospital claims that the district court should have judged each of Verducci's claims for frivolousness, not the lawsuit as a whole. Most, if not all, of Verducci's claims were groundless and frivolous, the Hospital contends, and thus, it was entitled to attorney's fees under § 11113.
 
 
 63
 The Hospital is correct that a district court should examine the frivolousness of each individual claim, not the suit as a whole. Section 11113 states that a court shall award to a party "defending against any such claim the cost of the suit attributable to such claim ... if the claim ... was frivolous, ..." (emphasis added). 42 U.S.C. § 11113. Although the district court did speak of some of Verducci's claims as groundless but noted that her allegations as a whole were reasonable, it appears that the district court did examine the merit of each individual claim.
 
 
 64
 First, Verducci's antitrust claims were not frivolous even though they were not meritorious. Although the district court rejected her argument that the service market for OB/GYN services was that of female OB/GYNs who perform abortions and accept Medi-Cal patients, it did accept her contention that the relevant service market was that of female OB/GYNs. This definition of the relevant service market significantly narrowed the service market and made it conceivable that the Hospital could have injured competition by bringing in male OB/GYN's to compete with Verducci and run her out of business. We cannot say that the district court abused its discretion by failing to find that Verducci's antitrust claims were frivolous.
 
 
 65
 The district court similarly did not commit clear error by concluding that Verducci's Section 1983 claims were not frivolous. With regard to Verducci's due process claims, the district court did find that Verducci had both a protected property and liberty interest. Moreover, the Hospital's Brown Act defense to Verducci's deprivation of a protected property interest claim did not surface until well into the litigation, and this cause of action survived the Hospital's first motion for summary judgment. Verducci also showed that she suffered harm in her business as a result of the actions the Hospital took against her; while this harm did not rise to the level necessary for a successful deprivation of liberty cause of action, it was not an abuse of discretion for the district court to find that this cause of action was not frivolous.
 
 
 66
 Moreover, had Verducci's Equal Protection argument been pled correctly as gender discrimination, it appears to have been supported by evidence in the record. Verducci's First Amendment argument was not meritless, either. She produced evidence showing that she had engaged in arguably protected speech. Although she lacked evidence that the adverse actions the Hospital took against her were in retaliation for her speech, it was not clear error for the district court to conclude this cause of action was not meritless.
 
 
 67
 We therefore conclude the district court did not abuse its discretion in refusing to grant the Hospital fees under the HCQIA because none of Verducci's claims, taken individually, were frivolous or unreasonable.
 
 
 68
 V. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY REFUSING TO ASSESS ATTORNEY'S FEES AGAINST VERDUCCI UNDER § 1988
 
 
 69
 A district court's decision not to award attorney's fees under § 1988 is reviewed for an abuse of discretion. See Christianburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978). An award of fees under § 1988 to a prevailing defendant is unusual because the policy reasons behind the award of fees to a prevailing plaintiff are not present when a defendant prevails. A district court in its discretion, however, may award a defendant in a civil rights suit attorneys' fees under § 1988 when a "plaintiff's action was frivolous, unreasonable, or without foundation." Id. at 421. This court has never found a district court's denial of attorneys' fees to a civil rights defendant to be an abuse of discretion. See Maag v. Wessler, 993 F.2d 718, 721 (9th Cir.1993). We decline to do so here.
 
 
 70
 Verducci brought four separate civil rights causes of action: for deprivation of a protected property interest without due process; for deprivation of a protected liberty interest without due process; a First Amendment claim; and an Equal Protection claim. As discussed above, the district court's conclusion that these claims were neither frivolous nor unreasonable was not clearly erroneous. We thus find that the district court did not abuse its discretion by refusing to grant the Hospital's motion for attorneys' fees under § 1988.
 
 CONCLUSION
 
 71
 We AFFIRM the district court's grant of summary judgment for the Defendants, and we AFFIRM the district court's denial of attorneys' fees under the Health Care Quality Improvement Act and under § 1988 for the Defendants.
 
 
 
 *
 The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the District of Eastern Virginia, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3