William Earl WARREN III, Plaintiff–Appellant,

v.

CITY OF CARLSBAD; Brian Watson; James Thompson; Frank Mannen; Raymond Patchett; Stewart Gary; Ann Jansen, Defendants–Appellees.

No. 93–55749.

United States Court of Appeals, Ninth Circuit.

Submitted June 9, 1995.*

Decided June 22, 1995.

---

* The panel unanimously found this case suitable for decision without oral argument. Fed. R.App.P. 34(a); Ninth Cir.R. 34–4.

Thomas R. Gill, San Diego, CA, for plaintiff-appellant.

Cynthia O'Neill, Whitmore, Johnson & Bolanos, Mountain View, CA, for defendants-appellees.

Before: PREGERSON, POOLE, and D.W. NELSON, Circuit Judges.

PREGERSON, Circuit Judge:

Plaintiff William Earl Warren III appeals the district court's grant of summary judgment in favor of defendants, the City of Carlsbad and city employees (collectively "the City"), and the district court's grant of Fed.R.Civ.P. 11 sanctions against him and Thomas Gill, an attorney (not of record) who helped him with the case. Warren alleges that the defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, by not promoting him to the position

of fire captain because of his national origin. We reverse.

## FACTS

Warren worked for the City of Carlsbad as a fire fighter from January 29, 1973 until his discharge on May 4, 1990. In October 1988, Warren took a promotional test for the position of fire captain. He scored 8th highest out of the twenty applicants who took the test. An outside consulting firm conducted the test which included a fire simulation, an "in-basket" exercise, and an evaluation of certain record-keeping and communication skills. Besides Warren, who is of Mexican descent, all the other applicants for the position of fire captain were white.

The twenty applicants, ranked in order by their performance on the test, became the "employment list" from which Fire Chief James Thompson made promotions. In January and May 1989, the Fire Chief appointed six of the applicants to the position of fire captain. Four of those appointed scored higher than Warren on the exam and ranked 1st, 2nd, 5th, and 7th. Two others appointed scored lower and were ranked 9th and 11th.

On December 19, 1989, Warren's psychiatrist notified the Fire Chief that Warren suffered from depression and that he had "intense homicidal ideas" about the Fire Chief. Warren attributes his depression to being passed over for a promotion because of his national origin. The City immediately placed Warren on administrative leave. After he was examined by two other doctors, the City placed Warren on disability leave starting on May 5, 1990. Warren did not challenge the City's determination that he was not able to carry out the duties of a fire fighter. Once his disability leave began, Warren was no longer eligible for a promotion to fire captain and was taken off the list.

On December 17, 1990, Warren filed a charge of employment discrimination against the City with the Equal Employment Opportunity Commission (EEOC), alleging *inter alia* that the City had denied him a promotion to fire captain in January and May 1989 because of his Mexican national origin.

On December 9, 1991, the EEOC issued Warren a right-to-sue letter at his request. On March 9, 1992, Warren filed this suit in the United States District Court for the Southern District of California.

Throughout the proceedings before the district court, Warren was assisted by Thomas Gill, a lawyer, who helped him draft his complaint but did not sign it. The district court granted summary judgment in favor of the City, finding that the City had not discriminated against Warren. The district court also imposed Fed.R.Civ.P. 11 sanctions of $5,000 each against Warren and Gill for filing a "frivolous" claim. Warren now appeals.

## ANALYSIS

### A. Standard of Review.

We review a grant of summary judgment de novo. *Jesinger v. Nevada Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994). We must determine whether the evidence, viewed in a light most favorable to the non-moving party, presents any genuine issues of material fact and whether the district court correctly applied the law. *Id.* Summary judgment is only proper if no material factual issues exist for trial. *Lindahl v. Air France,* 930 F.2d 1434, 1436 (9th Cir.1991).

We review the imposition of Rule 11 sanctions for an abuse of discretion. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990); *Newton v. Thomason,* 22 F.3d 1455, 1463 (9th Cir.1994).

### B. Employment Discrimination Claims.

A plaintiff can establish a prima facie case of race discrimination under Title VII by establishing that (1) he or she belongs to a racial minority; (2) he or she applied and was qualified for a job for which the employer was seeking applicants; (3) he or she was rejected for the position despite his or her qualifications; and (4) the position remained open after his or her rejection and the employer continued to seek applications from other people with similar qualifications to the plaintiff. *McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d

668 (1973).[1] In *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981), the Supreme Court stated that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous."

After the plaintiff has established a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the plaintiff's rejection. *Id.* If the employer sustains the burden, the plaintiff then has the opportunity to present evidence showing that the employer's stated reason for the rejection was merely pretextual. *Id.; see also McDonnell Douglas*, 411 U.S. at 807, 93 S.Ct. at 1826–27; *Lindahl*, 930 F.2d at 1437 ("The defendant's articulation of a legitimate nondiscriminatory reason serves … to shift the burden back to the plaintiff to raise a genuine factual question as to whether the proffered reason is pretextual.") (quoting *Lowe*, 775 F.2d at 1008).

■ The district court found that Warren failed to establish a prima facie case. The district court's analysis was flawed. First, the district court recited the *McDonnell Douglas* four-part test incorrectly. The third step does not require that a plaintiff prove that "he was rejected because of his protected status." The plaintiff must only show in step three that "despite his qualifications, he was rejected." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. The two standards are quite different. The *McDonnell Douglas* test merely requires that a plaintiff raise an *inference* of disparate treatment to establish a prima facie case, not *actual proof* of such treatment. The district court incorrectly transformed a single threshold factor into the ultimate question to be decided.

Having started with this incorrect legal standard, the district court found that "the plaintiff cannot establish the elements of a prima facie case because he cannot establish that the reason for his rejection was his national origin." But under *McDonnell Douglas*, to establish his prima facie case, Warren need not prove that discrimination was the motivating factor in his dismissal. All he must do is raise an inference that such misconduct occurred. Under the correct legal standard, Warren did allege facts sufficient to establish a prima facie case.

■ First, Warren belongs to a protected class because he is of Mexican descent. Second, he was found to be "substantially qualified" for the position of fire captain through testing. Third, he was turned down for the promotion despite his high rank on the promotion list. And fourth, several positions of fire captain remained open after Warren was passed over for the promotion. The district court erred when it found that Warren failed to present a prima facie case under *McDonnell Douglas*.

The district court found that even if Warren had met his burden of establishing a prima facie case, the defendants rebutted that case by offering legitimate, nondiscriminatory reasons for not promoting him. The district court also concluded that Warren had not raised a genuine issue of fact as to whether those reasons were pretextual.

Initially, the district court found that the defendants did not know that Warren was of Mexican descent. Warren refutes this finding convincingly, pointing to his own and other affidavits that show that at least certain members of the department, including Warren's supervisor, knew of his national origin. Warren claims that Fire Chief Thompson knew of his ethnicity both because it came up in conversations Warren had with him and because the fire fighters were a tight-knit group that share personal information about one another among themselves.

---

1. A plaintiff can also establish a prima facie case by "offering evidence adequate to create an inference that an employment decision was based on a discriminatory criteria illegal under [Title VII]." *Mitchell v. Office of the Los Angeles County Superintendent of Schools*, 805 F.2d 844, 846 (9th Cir.1986) (quoting *Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977)); *see Lowe v. City of Monro-*via, 775 F.2d 998, 1006 (9th Cir.1985) (plaintiff can establish prima facie case of disparate treatment without satisfying *McDonnell Douglas* test if he or she provides evidence suggesting rejection was based on discriminatory criteria), *amended*, 784 F.2d 1407 (1986). A plaintiff who provides such evidence for his or her prima facie case may be able to survive summary judgment on this evidence alone. *Lowe*, 775 F.2d at 1008.

The district court found that even if the Fire Chief had known of Warren's Mexican heritage, there was no evidence to suggest that Warren's national origin was the reason the Fire Chief did not promote him. The City claimed that it did not promote Warren because others were more qualified. The district court found this reason to be legitimate, pointing to affidavits of co-workers that suggested that Warren was not promoted because he was inflexible and lacked interpersonal skills. The district court concluded that Warren had not raised a genuine issue as to whether the City's proferred reason for his rejection were pretextual.

■ Although "the mere existence of a *prima facie* case, based on the minimum evidence necessary to raise a *McDonnell Douglas* presumption, does not preclude summary judgment," *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 890 (9th Cir.1994), "the plaintiff [who has established a prima facie case] need produce very little evidence of discriminatory motive to raise a genuine issue of fact" as to pretext. *Lindahl,* 930 F.2d at 1437. In fact,

> any indication of discriminatory motive ... may suffice to raise a question that can only be resolved by a factfinder. Once a *prima facie* case is established ... summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits because the crux of a Title VII dispute is the elusive factual question of intentional discrimination.

*Id.* at 1438 (quoting *Lowe,* 775 F.2d at 1009) (citation omitted). Thus, Warren's burden at the summary judgment stage is not great. He cannot, however, rely on generalizations. He must produce evidence of facts that either directly show a discriminatory motive or show that the City's explanation for his rejection is not credible. *Id.; accord Krenik v. County of Le Sueur,* 47 F.3d 953, 958 (8th Cir.1995). We conclude that Warren has raised genuine factual questions material to determining whether discrimination motivated his rejection.

Warren first presented statistics to show that the reasons the City gave for not promoting him were pretextual. *See McDonnell Douglas,* 411 U.S. at 805, 93 S.Ct. at 1825–26

(suggesting that statistics as to an employer's employment policy and practice "may be helpful" in establishing that a particular employment decision was in conformance with a general pattern of discrimination); *Lowe,* 775 F.2d at 1008 (same); *Diaz v. AT & T,* 752 F.2d 1356, 1363 (9th Cir.1985) (same). The record reflects that only two men of color work in the entire Carlsbad fire department, and that they occupy the lowest ranking positions. Furthermore, of the twenty five fire fighters who have served as fire captain over the past nineteen years, only one was a member of a minority group. Next, Warren alleged that he "personally heard [Fire Chief] Thompson make a derogatory comment [about] Hispanics." *See Lindahl,* 930 F.2d at 1439 (finding that supervisor's remarks indicating sexual stereotyping create inference of discriminatory motive); *Lowe,* 775 F.2d at 1009 (suggesting that a discriminatory remark can create inference of discriminatory motive).

We also note that the City's proffered reason for not having promoted Warren is based on Fire Chief Thompson's subjective evaluation of Warren's communication skills. Although "in many situations, [subjective criteria] are indispensable to the process of selection in which employers must engage," *Sengupta v. Morrison–Knudsen Co.,* 804 F.2d 1072, 1075 (9th Cir.1986), Warren was never evaluated formally on his ability to work with people. We have previously stated that "subjective practices are particularly susceptible to discriminatory abuse and should be closely scrutinized." *Jauregui v. City of Glendale,* 852 F.2d 1128, 1136 (9th Cir.1988) (quoting *Atonio v. Wards Cove Packing Co., Inc.,* 810 F.2d 1477, 1481 (9th Cir.1987) (en banc)).

Viewing all the evidence in a light most favorable to Warren and "resolving all inferences in [his] favor, as we must," *Lowe,* 775 F.2d at 1009, we conclude that Warren has raised a genuine issue of material fact as to the City's motive in rejecting him. Despite his qualifications, Warren was not hired while non-minority applicants who ranked below him on the employment list were hired. This fact, together with the statistical evidence regarding the City's "general policy and practice with respect to minority employment," *McDonnell Douglas,* 411 U.S. at 804–

05, 93 S.Ct. at 1825, the subjective criteria used in hiring, and the allegation of a racist remark, raise a genuine issue of material fact as to the City's motive in rejecting Warren. Thus, we conclude that summary judgment was granted improperly on Warren's Title VII claim.

### C. Rule 11 Sanctions.

■ Warren also appeals the district court's imposition of Rule 11 sanctions against him and Thomas Gill, the attorney (not of record) who helped him with his case in the district court. We find that the district court abused its discretion when it imposed these sanctions.

Federal Rule of Civil Procedure 11 provides that a district court may sanction attorneys or parties who submit pleadings for an improper purpose or that contain frivolous arguments or arguments that have no evidentiary support.[2] The district court first discussed the possibility of awarding attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k), but then imposed Rule 11 sanctions. The district court found that Warren's claim "is clearly frivolous because plaintiff has submitted no evidence of discrimination other than his personal opinion...."

We disagree. Warren submitted statistical evidence suggesting possible bias in the fire department. The record contains affidavits showing that several people at the fire department were aware of Warren's Mexican heritage. The record also reveals test scores showing that Warren was qualified for the promotion. Warren made out a prima facie case of disparate treatment and also offered evidence raising a genuine issue of material fact as to pretext. Even if the district court had correctly found this evidence to be insufficient for purposes of summary judgment, that "does not mean that appellants' claims were factually unfounded for purposes of Rule 11." *Stitt v. Williams*, 919 F.2d 516, 527 (9th Cir.1990).

We have previously held that a district court may impose monetary sanctions, in the form of attorneys' fees, upon plaintiffs who file Title VII claims that are "frivolous, unreasonable, or without foundation." *See EEOC v. Bruno's Restaurant*, 13 F.3d 285, 287 (9th Cir.1993) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978)). However, we specifically instructed that "[b]ecause Congress intended to 'promote the vigorous enforcement of the provisions of Title VII,' a district court must exercise caution in awarding fees to a prevailing defendant in order to avoid discouraging legitimate suits that may not be 'airtight.'" *Id.* (quoting *Christiansburg*, 434 U.S. at 422, 98 S.Ct. at 700–701); *see also EEOC v. Consolidated Serv. Sys.*, 30 F.3d 58, 59 (7th Cir.1994) (suggesting that the "frivolous" standard is much more stringent than merely "not substantially justified"). This same standard must apply to an assessment of Title VII claims under Rule 11, lest this Rule be used to thwart Congress's intent. Courts must heed "the Supreme Court's warning in *Christiansburg* against the 'temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.'" *Bruno's Restaurant*, 13 F.3d at 290 (quoting *Christiansburg*, 434 U.S. at 421–22, 98 S.Ct. at 700–701); *see also Forsberg v. Pacific Northwest Bell Tel. Co.*, 840 F.2d 1409, 1422 (9th Cir.1988) (applying the same "frivolous, unreasonable, or without foundation" standard to request for sanctions under Rule 11 and 42 U.S.C. § 2000e-5(k)).

Warren made a prima facie showing of Title VII disparate treatment under *McDonnell Douglas*. He also raised additional facts that may point to a discriminatory motive for his rejection. Therefore, the district court's conclusion that Warren's case was "clearly frivolous" is incorrect. *See Marquart v. Lodge 837, Int'l Assoc. of Machinists & Aerospace Workers*, 26 F.3d 842, 853 (8th

**2.** Fed.R.Civ.P. 11 was amended after the district court issued its disposition. The version in effect when this case was before the district court provided that:

The signature of an attorney or party constitutes a certificate by the signer ... that to the best of the signer's knowledge ... [the pleading or motion] is well grounded in fact and is

warranted by existing law or a good faith argument for the extension ... of existing law ... and that it is not interposed for any improper purpose.... If a pleading ... is signed in violation of this rule, the court, upon motion, or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction....

Cir.1994) (suggesting that a plaintiff who makes out a prima facie case under Title VII cannot be found to have presented a claim that is "frivolous, unreasonable, or groundless"); *Kizer v. Children's Learning Ctr.*, 962 F.2d 608, 613 (7th Cir.1992) (affirming a district court's decision not to impose Rule 11 sanctions on a plaintiff who had failed to make out a prima facie case under Title VII because the claim was not filed with improper motives or inadequate investigation).

We need not determine whether the district court had the authority to impose sanctions against Gill, the attorney helping Warren, even though Gill did not sign the pleadings, because we find that sanctions are not appropriate in any case. Accordingly, we reverse the district court's imposition of sanctions under Rule 11.[3]

## CONCLUSION

We find that the district court erred in concluding that no factual issues existed for trial as to Warren's Title VII claim. We also find that the district court abused its discretion in imposing Rule 11 sanctions against Warren and Gill. Reversed and remanded.

---

**3.** We also deny the appellees' request for attorneys' fees on appeal pursuant to 42 U.S.C. § 2000e–5(k).