73 F.3d 369
 77 A.F.T.R.2d 96-625, 96-1 USTC P 50,100
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Richard C.Y. ING; Helen W.Y. Ing, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 94-15163.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 8, 1995.
Decided Dec. 22, 1995.
 
 Before: HUG, THOMPSON, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Richard and Helen Ing, a married couple ("the Ings"), appeal the district court's grant of summary judgment against them. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and we affirm.
 
 I.
 
 3
 The Ings argue that the district court erred in concluding that they were not entitled to a casualty theft deduction, and therefore, it erred in granting the Government's summary judgment motion. We review a district court's grant of summary judgment de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.), petition for cert. filed, 64 U.S.L.W. 3271 (U.S. Sept. 20, 1995) (No. 95-481). We must determine, when viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id.
 
 
 4
 A taxpayer claiming a casualty theft deduction pursuant to Internal Revenue Code Sec. 165(c)(3) bears the burden of proving that he has satisfied all the requirements of the Code. See Welch v. Helvering, 290 U.S. 111, 115 (1933). Section 165(c)(3) provides that deductions are limited to "losses of property not connected with a trade or business or a transaction entered into for profit, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft." 26 U.S.C. Sec. 165(c)(3). To be eligible for a casualty loss under section 165(c)(3), the loss must be the result of physical damage to property. See Pulvers v. Commissioner, 407 F.2d 838, 839 (9th Cir.1969). The law of the jurisdiction where the loss is sustained determines whether a theft has occurred under section 165. See Bellis v. Commissioner, 540 F.2d 448, 449 (9th Cir.1976).
 
 
 5
 In the present case, Mr. Ing was simply paying off his mistress to keep her quiet. We do not characterize such conduct as either a casualty loss or a theft loss that meets the requirements of section 165(c)(3). Therefore, we conclude that the Ings' claimed deduction based on the monies that Mr. Ing paid his mistress to keep her from revealing their extramarital affair is not deductible under section 165(c)(3). Therefore, we affirm the district court's summary judgment.
 
 
 6
 AFFIRMED.
 
 O'SCANNLAIN, Circuit Judge, dissenting:
 
 7
 I respectfully dissent because I am persuaded that the Ings may yet be able to satisfy the requirements of I.R.C. Sec. 165(c)(3), possibly entitling them to a theft loss deduction. I would reverse the grant of summary judgment.
 
 
 8
 The majority seems to be impressed by public policy reasons for denying a tax deduction to an adulterer. Notwithstanding Ing's arguably unsavory character, he may qualify as a victim of a theft under Hawaii law which states that a person commits theft if "he obtains, or exerts control over, the property of another by deception with intent to deprive him of the property." Hawaii Revised Statutes Sec. 708-830(2). Although the state court found that Ing failed to prove that any money he paid his mistress (Paden) was based on reliance on her representations that she was pregnant, that she required an abortion, that she paid attorneys to destroy medical records, and that she would expose their extramarital affair, Paden admitted to making such false representations. She testified "that she wanted to scare Ing into paying her the money she had loaned him, so she made up the stories of how she had paid her military attorney to obtain and destroy the medical records of her abortion from her doctor/hospital." This admission reveals that Paden obtained funds from Ing under false pretenses which could constitute theft. Accordingly, the Ings might well qualify for a theft loss tax deduction.
 
 
 9
 Although the state court, in a separate action, found that Ing had failed to prove by clear and convincing evidence that Paden had committed extortion, fraud, or misrepresentation against him, theft, for purposes of a tax deduction, may be proved simply by a preponderance of the evidence. A criminal conviction for theft is not necessary to sustain a theft loss deduction. Monteleone v. Commissioner, 34 T.C. 688, 694 (1960); see Warner L. Jones v. Commissioner, 34 T.C. 688, 694 (1960); see Warner L. Jones v. Commissioner, 24 T.C. 525 (1955) (granting deduction where loss was shown merely to have been "occasioned by circumstances clearly indicating theft"). In Monteleone, the court deemed a defendant's admission that he had obtained funds from petitioner under false pretenses sufficient proof that petitioner had sustained a theft loss. 34 T.C. at 693. Here, Paden testified that she "made up stories" to "scare Ing into paying her the money she had loaned him." In light of Monteleone, Paden's admission alone may sufficiently establish theft for purposes of a tax deduction.
 
 
 10
 I would remand the case for trial on the merits of whether there was a theft within the meaning of the Internal Revenue Code.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3