76 F.3d 384
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Laura CAMPOY, Plaintiff-Appellant
v.
PLAYTEX FAMILY PRODUCTS, CORP., Ortho Pharmaceutical Corp.
Defendant-Appellant.
 No. 94-16563.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 8, 1995.
Decided Jan. 30, 1996.
 
 Before: BROWNING, CANBY and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiff/Appellant Laura Campoy brought a products liability suit against Ortho Pharmaceutical Corp. alleging that Ortho had inadequately warned doctors and consumers of the risk of toxic shock syndrome from diaphragm use. Campoy now appeals the district court's summary judgment for defendant Ortho. We affirm.
 
 BACKGROUND
 
 3
 Campoy's physician, Dr. Ruth Crane, fitted Campoy with an Ortho All-Flex Diaphragm and gave her a prescription for a diaphragm. Dr. Crane cannot recall Campoy's visit, but Dr. Crane testified that her usual instructions to patients were "that they need to insert [the diaphragm] before they have intercourse, usually no more than one hour before intercourse, and that they need to leave it in at least six to eight hours after [intercourse] before removing it, and should not leave it in longer than 24 hours." Dr. Crane testified that she probably had heard of diaphragm use being associated with toxic shock syndrome at the time of Campoy's visit, but that she did not discuss toxic shock syndrome with any of her patients who were using or about to use diaphragms, either then or at any time, because she considered toxic shock syndrome resulting from diaphragm use to be an extremely rare event.
 
 
 4
 Campoy filled her diaphragm prescription. She did not read any of the information in the instruction booklet, although she testified that she "might have glanced at it."
 
 
 5
 On the evening during which Campoy developed toxic shock syndrome, Campoy was menstruating and had been using tampons. About 10:00 p.m. she removed her tampon and inserted the diaphragm. At that time she felt "a little bit under the weather." She then had intercourse. Later that night she awoke with chills, and about 5:00 a.m. she was driven to the hospital, where she was diagnosed with toxic shock syndrome.
 
 ANALYSIS
 
 6
 A grant of summary judgment is reviewed de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995).
 
 
 7
 Campoy failed to raise a genuine issue of material fact regarding whether the diaphragm was the cause of Campoy's toxic shock syndrome. See id. ("[In reviewing a grant of summary judgment, we] must determine whether the evidence, viewed in a light most favorable to the non-moving party, presents any genuine issues of material fact and whether the district court correctly applied the law."). None of the three studies offered supports a finding of causation. The first, a 1983 study by Baehler & Dillon, et al., indicated that keeping a diaphragm in place for 24 hours encouraged the growth of Staphylococcus aureus, the bacterium associated with toxic shock syndrome. Campoy had symptoms of toxic shock syndrome after having had the diaphragm in for the recommended period of time, six to eight hours. A second study, also performed by Baehler, did use an eight-hour timeframe. This study, however, was never completed and Baehler testified that the results are inconclusive. Moreover, this study did not pertain to Staphylococcus aureus, the bacterium associated with toxic shock syndrome, but rather to a different bacterium. The third study found an association between non-menstrual toxic shock syndrome and barrier contraceptives. Campoy was menstruating at the time she developed toxic shock syndrome, however. Thus, the studies show only that extended wear of the diaphragm may increase the risk of toxic shock syndrome. If Ortho had failed to warn of this risk, such failure could not have caused Campoy to suffer from toxic shock syndrome because Campoy did not have the diaphragm in place for an extended period of time. Moreover, Campoy was already feeling ill before she took out the tampon and put in the diaphragm. Thus, viewing the evidence in the light most favorable to Campoy, a genuine issue of material fact does not exist as to whether Ortho's alleged failure to warn caused appellant's injuries.
 
 
 8
 Because we find that Campoy failed to raise a genuine issue of material fact regarding causation, we need not address the issues of whether California's learned intermediary rule applies to diaphragms or whether Campoy raised a genuine issue of material fact regarding the adequacy of Ortho's warnings.
 
 
 9
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3