Ramsey PASATIEMPO, a minor, by his mother and next friend, Wanda PASATIEMPO, on behalf of himself and all others similarly situated; Peter Ferreira, a minor, by his mother and next friend, Mary Ferreira, on behalf of himself and all others similarly situated; Tina Williams, a minor, by her mother and next friend, Jasmine Williams, on behalf of herself and all others similarly situated, Plaintiffs–Appellants,

v.

Herbert AIZAWA, in his official capacity as Superintendent of the Department of Education of the State of Hawaii; Ernesta Masagatami, individually and in her official capacity as superintendent of the Honolulu district of the Department of Education of the State of Hawaii; State of Hawaii, Defendants–Appellees.

No. 94–17092.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 1996.

Decided Dec. 19, 1996.

Before: FLETCHER, D.W. NELSON, and CANBY, Jr., Circuit Judges.

D.W. NELSON, Circuit Judge.

Appellants Ramsey Pasatiempo, Peter Ferreira, and Tina Williams, on behalf of themselves and a class of similarly situated individuals ("Parents and Students"), appeal the district court's grant of summary judgment in favor of Appellee Department of Education of the State of Hawaii ("DOE"). Parents and Students maintain that in administering individual evaluations of students without comporting with the procedural requirements of the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400–1485 ("IDEA") and the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"), the DOE violated federal law.[1] We have jurisdiction over this appeal, 28 U.S.C. § 1291, and we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. *Statutory and Regulatory Background*

The IDEA requires that all students with disabilities be "identified, located, and evaluated," 20 U.S.C. § 1412(2)(C), and that their parents be notified when a school district intends to evaluate them for special education, 20 U.S.C. § 1415(b)(1)(C). In order to comply with these statutory mandates, the DOE adopted Haw.Admin.R.Chap. 36 ("Chapter 36"), the goal of which is to guarantee procedural protections to students and their parents during the evaluation and placement processes:

The purpose of this chapter is to provide procedures that protect the due process rights of children who are handicapped, or who are suspected of being handicapped, and their parents in matters relating to identification, evaluation, program, placement, or the provision of a free appropri-

Shelby Anne Floyd, Mary Martin, Alston Hunt Floyd & Ing, Honolulu, HI, for plaintiffs-appellants.

Margery S. Bronster, Russell A. Suzuki, Steven K. Chang, Deputy Attorneys General, Honolulu, HI, for defendants-appellees.

---

1. Parents and Students also raised before the district court claims under the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g ("FERPA"). Because those claims are not addressed in the briefs before this court, they will not be considered here.

ate public education and to inform the public of these procedures and rights.

Haw.Admin.R. § 8–36–1 (Jan. 6, 1986).

In a similar vein, Section 504 of the Rehabilitation Act requires the DOE to conduct preplacement evaluations of students who, because of a disability, need or are believed to need special education or related services before those students are placed in a regular or special education program. 34 C.F.R. § 104.35(a). These are referred to as Chapter 36 assessments. Regulations promulgated under § 504 also provide parents with certain procedural safeguards:

> A recipient that operates a public elementary or secondary education program shall establish and implement, with respect to actions regarding the identification, evaluation, or educational placement of persons who, because of handicap, need or are believed to need special instruction or related services, a system of procedural safeguards that includes notice, an opportunity for the parents or guardian of the person to examine relevant records, an impartial hearing with opportunity for participation by the person's parents or guardian and representation by counsel, and a review procedure.

34 C.F.R. § 104.36. The regulations further provide that compliance with the IDEA's procedures satisfies the requirements of § 504. *Id.*

The evaluations at issue in this case, however, are conducted without the benefit of these procedural safeguards, and are described by the DOE as "non-Chapter 36 assessments." The DOE explains that these assessments are "conducted for students who are not suspected of having a handicap, but who may be exhibiting achievement delays or adjustment difficulties, which may require alternative teaching strategies." The scope of these evaluations may be quite broad. A DOE specialist testified that non-Chapter 36 tests "include, but are not limited to," the following:

spelling, vocabulary, dictionary skills, research skills, reading, diction, language arts, comprehension, decoding, word analysis, writing, punctuation, expression, grammar, syntax, arithmetic calculations, mathematic calculations, geometric calculations, algebraic calculations, word problems, grapho-motor skills, penmanship, determination of social resources available in the community, crisis intervention, parenting skills (divorce), counseling services, hearing tests, vision tests, intellectual, and psychological testing.

The DOE contrasts these assessments with Chapter 36 evaluations, which "include, at the minimum, 10–14 tests in the battery provided in the four areas of intellectual, speech/language, academic, and social development." *See* 34 C.F.R. §§ 300.532(d) & (f); Haw.Admin.R. § 8–36–11.

If either a parent or a teacher requests an evaluation, he or she completes a "Request for Evaluation." Some of the request forms are designated as "Non–Department of Education Evaluation Request[s]," while the others have no such limiting provision, and presumably refer to comprehensive assessments. The forms are otherwise identical; they neither distinguish between the two types of evaluations, nor provide any mechanism whereby individuals may select between the two. The request is then reviewed by a school screening committee which decides whether an evaluation will be administered, and if so, what kind. If the committee decides that an assessment of a student is warranted, it completes a "Referral for Special Services" on which it describes its reasons for recommending the evaluation, and transmits the form to the DOE. On the form, the requester indicates the areas in which the student is experiencing difficulties. A substantial impairment of the student's abilities in a number of these areas would likely reflect a disability.[2] The requester then chooses between making a Chapter 36 or a non-Chapter 36 referral, and transmits the form to the DOE.

---

2. The form includes among its "Reason[s] for Referral" four categories: Academics, Social/Emotional, Speech/Language, and Health/Physical. The requester may choose as many characteristics from each of these categories as describe the child's condition. Some of those characteristics include "delayed speech/language," "hearing," "vision," and "gross motor coordination."

The DOE appears in some cases to make little distinction between the two types of evaluation requests. With respect to at least one of the class members for whom a non-Chapter 36 evaluation had been requested, the DOE responded to the referral by issuing a letter stating that an initial comprehensive evaluation would not be conducted.[3] Similarly, in cases where parents have completed "Non–Department of Education Evaluation Request[s]," the DOE has in some cases provided comprehensive evaluations.

When the DOE decides to conduct a non-Chapter 36 evaluation, it sends to parents a "Notification of a Special Evaluation." That form includes a checklist of reasons for the evaluation which include hearing, speech/language, and academic and social work. The form further provides that "[t]hese services may include interviews, observations and/or when appropriate, tests or scales given by qualified personnel." When parental consent is requested, the consent form asks only that the parent "give consent to the Department of Education to provide intellectual and academic assessments to facilitate educational programming and to assist in the guidance of [the] child." It does not, however, state that the evaluation to be conducted is not a comprehensive special education test.

## II. *The Class Representatives*

### A. *Tina Williams*

When Tina Williams was in the second grade, her mother requested an evaluation. Tina was referred for a non-Chapter 36 assessment, but Parents and Students contend that her mother was not informed of the fact that Tina would not receive a comprehensive evaluation. After Tina was given the non-Chapter 36 test, her mother was informed that Tina did not qualify for special education. Parents and Students maintain that she was not given notice of her right to challenge the test results.

Subsequently, Tina's mother arranged for an independent psychological and educational evaluation. The results of the evaluation indicated that Tina had a number of problems, among them difficulties with hearing and comprehension. Tina's mother then requested another evaluation. The form on which she made her request was designated as a "Non–Department of Education Evaluation Request." The DOE, however, responded to the request by performing a comprehensive evaluation, and found Tina to have a Specific Learning Disability ("SLD") and to be eligible for special education.

### B. *Ramsey Pasatiempo*

In May 1990, Ramsey Pasatiempo, a first grade regular student, was given a non-Chapter 36 assessment in response to a school referral. The reasons given for the referral included Ramsey's hyperactivity, inattentiveness, and difficulty understanding instructions. The school completed a "Referral for Special Services" form, but there is no indication that Ramsey's parents consented to the administration of the non-Chapter 36 test. After administering the evaluation, the DOE concluded that because Ramsey "was performing at the first grade level ... no further testing was warranted."

Later, on November 30, 1992, Ramsey's parents requested an evaluation; like the Williams' form, it too was designated as a "Non–Department of Education Evaluation Request." Nonetheless, on December 11, 1992, his parents were informed by the DOE that he was to be given a comprehensive special education evaluation.

### C. *Peter Ferreira*

On or about May 23, 1990, Peter Ferreira, a first grade regular education student, was referred by his school to a screening committee, and was later referred to the District's Special Services team for a non-Chapter 36 assessment. On May 24, 1990, the Special Services team informed the principal of Peter's school that because Peter was performing at his current grade level, a non-Chapter 36 assessment was not warranted. However,

---

**3.** The form also notified the student's parents of their procedural rights under Chapter 36, as it included a provision stating "Parents Please Note: An impartial hearing under Chapter 8–36–14 may be requested by a parent or the Department of Education on any matter relating to proposed (or refused) action to initiate (or change) the identification, evaluation, program, or placement of a child."

Parents and Students contend that Peter had already been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), a potentially disabling condition under § 504. *See Farmington Public Schools,* 17 E.H.L.R. 872, 874 (1991) (students with ADHD must be evaluated to determine their eligibility for special education and related services under § 504).

On September 5, 1991, Peter's mother sought an evaluation; however, she rescinded her request on September 11, 1991. On March 3, 1993, she again requested an evaluation, noting on her request form that Peter had been diagnosed with ADHD. She received from the DOE two different responses: On March 12, she received a "Notice of Special Evaluation" that informed her that Peter was to be tested for "academic abilities," but did not indicate the type of evaluation that was to be given or notify her of the fact that she could challenge its results. Seven days later, she received a form which indicated that "an initial evaluation," or a comprehensive test, would not be administered. On June 9, 1993, she again requested an evaluation. The DOE then agreed to administer a comprehensive assessment.

III. *The District Court's Decision*

The class representatives argued before the district court that the bases for the non-Chapter 36 referrals were in many cases similar to the reasons given for the comprehensive evaluations. They also noted that the non-Chapter 36 tests are administered selectively to individual children. 34 C.F.R. § 300.500(b). Therefore, the class representatives asserted, the procedural safeguards applicable to the comprehensive tests should be applicable to the non-Chapter 36 evaluations. The district court held that the fact that the reasons given for the non-Chapter 36 referrals were similar to those given for comprehensive evaluations was not determinative. The court reasoned that school officials were entitled to draw conclusions about whether a particular problem was indicative either of a disability or instead of something less serious. The district court further held that it was not merely the administration of an evaluation to an individual child that triggered the IDEA's protections, but rather, the selective evaluation of children whom the school district suspected of being disabled. The court found that there was no evidence that the DOE had any such suspicions, and that accordingly, the parents of students given the non-Chapter 36 tests had no right to avail themselves of the IDEA's procedural safeguards.

As to the class representatives, the district court found that Tina's mother, Ms. Williams, was informed about and consented to the non-Chapter 36 assessment; the DOE had sent her forms "which indicate[d] that Tina would be tested for academic and intellectual abilities." The court noted that comprehensive special education evaluations are discussed in brochures that are sent to all parents. These brochures describe the evaluations as including "separate assessments that cover all areas related to the suspected disability, including where appropriate, health, vision, hearing, social and emotional status, general intelligence, academic performance, communication skills, and motor abilities." The court went on to observe that "Ms. Williams has not stated that she never received this pamphlet." The court, therefore, "assum[ed]" that she "must have known" that Tina was not being given a comprehensive evaluation because Tina was only to be tested for academic and intellectual abilities. The court also found that after Ms. Williams consented to the non-Chapter 36 testing, she was told that she could request an IDEA hearing if she disagreed with the DOE evaluation. Parents and Students contend, however, that she received no notice of her right to challenge the test results. The district court also found that Peter's mother, Ms. Ferreira, had withdrawn her request for an evaluation, but did not address the fact that she later renewed her request.

The court granted the DOE's motion for summary judgment, and subsequently denied the class members' motion for reconsideration. Parents and Students now appeal.

*STANDARD OF REVIEW*

■ ■ A grant of summary judgment is reviewed de novo. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. de-*

*nied,* —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.*

■ A denial of a motion for reconsideration under Rule 59(e) is construed as one denying relief under Rule 60(b) and will not be reversed absent an abuse of discretion. *Barber v. Hawai'i,* 42 F.3d 1185, 1198 (9th Cir.1994); *Fuller v. M.G. Jewelry,* 950 F.2d 1437, 1441 (9th Cir.1991).

## DISCUSSION

### I. The Controlling Suspicion Under the IDEA and § 504

■ Parents and Students contend that the procedural safeguards applicable to comprehensive special education evaluations, which include notice of the proposed action or inaction, an opportunity for parents to examine relevant records, and an impartial hearing, should be available to parents when non-Chapter 36 evaluations are administered as well. *See* 34 C.F.R. § 104.36. That the administration of those tests should trigger the IDEA's protections, they argue, is indicated by the fact that the non-Chapter 36 evaluation is a "procedure[ ] used selectively with an individual child," rather than a "basic test[ ] administered to or [a] procedure[ ] used with all children in a school, grade, or class." 34 C.F.R. § 300.500(b).

The DOE relies upon the fact that the regulations implementing the IDEA and § 504 speak only of children who are suspected of having a disability, and regulate only those tests that are conducted to determine whether a child is eligible for special education. *See* 34 C.F.R. § 300.500 (" 'Evaluation' means procedures used ... to determine whether a child has a disability and the nature and extent of the special education and related services the child needs."); 34 C.F.R. § 104.36 ("A recipient that operates a public elementary or secondary education program shall establish and implement, with respect to actions regarding the identification, evaluation, or educational placement of persons who, because of handicap, need or are believed to need special instruction or related services, a system of procedural safeguards that includes notice, ... [and] an impartial hearing...."). The DOE contends that it did not suspect that the students who were given the non-Chapter 36 tests had disabilities. Those children, the DOE explains, were thought only to suffer from certain "achievement delays." Accordingly, the DOE maintains that because it neither suspected any of those children of being disabled, nor tested them to determine their eligibility for special education, the IDEA's mandate does not apply. On this basis, the district court granted the DOE's motion for summary judgment.

By arguing that the procedural safeguards apply only when *the DOE* suspects or believes a child is disabled, however, the DOE asks that we grant it almost absolute control over whether parents and students may avail themselves of the procedural protections offered under the IDEA and § 504. This we decline to do, as there is nothing in either the language or the legislative history of the statutes that suggests that it is the school district's suspicion or belief alone that activates the procedural safeguards. While the regulations do refer to children who are "suspected of being disabled," or who are "believed to need special education," they do not specify whose suspicions are controlling. Indeed, nowhere does the statutory or regulatory framework provide that the DOE is to be responsible for harboring the initial suspicion, or making the initial determination, of whether a student is disabled. Rather, the relevant provisions merely state that it is incumbent upon school districts to provide testing and special education services to students who are considered disabled, and to develop procedures that protect the due process rights of parents when school districts either provide, or refuse to provide, these services. *See* 20 U.S.C. § 1412(2)(C) ("[States must develop policies and procedures to assure that] all children residing in the State who are disabled, regardless of the severity of their disability, and who are in need of special education and related services are identified, located, and evaluated, and

that a practical method is developed and implemented to determine which children are currently receiving needed special education and related services and which children are not currently receiving needed special education and related services."); 20 U.S.C. § 1415(b)(1)(C) ("[States must provide] written prior notice to the parents or guardian of [a handicapped] child whenever [the State] (i) proposes to initiate or change, or (ii) refuses to initiate or change, the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to the child."); 20 U.S.C. § 1412(7) ("The State shall assure that ... procedures are established for consultation with individuals involved in or concerned with the education of children with disabilities, including individuals with disabilities and parents or guardians of children with disabilities...."); 34 C.F.R. § 104.36 ("A recipient that operates a public elementary or secondary education program shall establish and implement, with respect to actions regarding the identification, evaluation, or educational placement of persons who, because of handicap, need or are believed to need special instruction or related services, a system of procedural safeguards."). Contrary to the DOE's contention, these provisions should not be read as imparting to the DOE the unquestioned authority to determine whether a child may be disabled, and whether the procedural protections apply in the first instance.

The procedural safeguards, which allow parents the opportunity to be notified of and to contest school district decisions, were not intended merely to facilitate parental responses to a school district's suspicion of disability. Congress intended the procedural protections to counteract the tendency of school districts to make decisions regarding the education of disabled children without consulting their parents, and to require school districts to respond adequately to parental concerns about their children. *See* S.Rep. No. 168, 94th Cong., 1st Sess. 1, 3 (1975), *reprinted in* 1975 U.S.C.C.A.N. 1425, 1427 ("[E]ducational agencies [must] be held accountable for providing educational services for all handicapped children."); *Honig v. Doe*, 484 U.S. 305, 311, 108 S.Ct. 592, 598,

98 L.Ed.2d 686 (1988) (holding that because Congress was "aware that schools had all too often denied [disabled] children appropriate educations without in any way consulting their parents, [it] repeatedly emphasized throughout the Act the importance and indeed the necessity of parental participation in [developing an educational program for the child]"); *see also* 20 U.S.C. § 1412(7) ("The State shall assure that ... procedures are established for consultation with individuals involved in or concerned with the education of children with disabilities, including individuals with disabilities and parents or guardians of children with disabilities....").

The identification of children who have disabilities should be a cooperative and consultative process. As is indicated by the DOE's misdiagnosis of Tina Williams, DOE determinations regarding a student's ability can be flawed. Such experiences suggest that DOE determinations alone should not be determinative. The informed suspicions of parents, who may have consulted outside experts, should trigger the statutory protections. When DOE or the parents suspect disability, the parents should receive notification of, and have the opportunity to contest, conclusions regarding their children.

Moreover, to rely entirely on a school district's determinations would be to grant the DOE a measure of unilateral discretion that does not exist elsewhere in the special education arena. *See, e.g., Doe by Gonzales v. Maher*, 793 F.2d 1470, 1482 (9th Cir.1986) (holding that school officials seeking to expel a disabled student must 1) notify the student's parents in writing of the intent to expel, 2) convene a meeting of the student's individualized education plan (IEP) team to discuss the reasons for the child's misconduct and the appropriateness of her current placement, 3) conduct an independent evaluation of the student's educational needs, 4) inform the student's parents of their right to demand administrative review of the IEP team decisions and judicial review of the final administrative determination, and 5) allow the student to remain in her then-current educational placement pending resolution of any review proceedings, unless the parents otherwise agree), *aff'd as modified by Honig v.*

*Doe,* 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).

The statutes and relevant regulations refer to suspected disabilities; they aim to encourage consultation between parents and school districts. This goal counsels against interpreting the provisions to vest sole discretion in the DOE to determine whether consultation is available. Rather, the legislative emphasis upon joint decisionmaking suggests that when a parent suspects his or her child is disabled and requests an evaluation, that suspicion should be sufficient to place any subsequent action or inaction taken with respect to that request within the ambit of the IDEA and § 504.[4]

Accordingly, if the DOE decides to administer a non-Chapter 36 test in response to a parental request that is triggered by the parents' concern that the child has disabilities, the parents must be notified of the decision and given the right to challenge it. Every parental request for an evaluation need not result in the administration of a Chapter 36 evaluation, or any evaluation at all. But the IDEA encourages parental participation in educational decisionmaking. And it would frustrate that purpose if school districts were not required to respond to parental suspicions of disability, and to provide some mechanism whereby parents may challenge DOE determinations.

We hold that when a parent requests an evaluation because he or she suspects that his or her child may be disabled, the parent must be notified of the DOE's response and how to challenge it. 20 U.S.C. § 1415(b)(1)(C). The DOE must make clear to parents whether it proposes to undertake a Chapter 36 or a non-Chapter 36 evaluation or no evaluation at all, and it must afford parents an opportunity to challenge the proposal.

II. *The Reasonableness of DOE's Disability/"Achievement Delay" Distinction*

■ Moreover, just as the DOE's responses do not control whether parents who re-

quest evaluations may avail themselves of procedural safeguards, they do not justify ignoring the IDEA's procedural protections when the district initiates non-Chapter 36 testing. The DOE contends that it administered the non-Chapter 36 tests to develop teaching strategies to better address children's "achievement delays," rather than to determine whether children were disabled. We have no quarrel with the proposition that school officials may draw distinctions between students on the basis of the perceived severity of their problems, and that, on the basis of such distinctions, they may design and administer different types of tests in order to measure different student abilities or impairments. We find, however, that the DOE makes no clear distinction between situations that call for a Chapter 36 test and those in which a non-Chapter 36 test is adequate. The distinction that the DOE attempts to draw between the two types of evaluations appears ad hoc and subjective.

In fact, in some cases the DOE treats the non-Chapter 36 evaluation requests as requests for comprehensive testing. It was in response to the Williams' and the Pasatiempos' requests for non-Department of Education evaluations that the DOE agreed to administer Chapter 36 tests. And Peter Ferreira's referral for a non-Chapter 36 evaluation was denied as an initial comprehensive evaluation request. This fusion of procedures for responding to the different types of evaluation requests suggests that the boundaries between the two types of tests are not delineated as clearly as the DOE now argues.

We also think that the district court overlooked the confusion that the DOE's non-Chapter 36 procedures may engender, particularly with respect to the "Notification of Special Evaluation" that is sent to parents when a non-Chapter 36 test is to be administered. The notice may be less problematic when a parent has completed a "Non–De-

---

4. The need to adopt such a rule is well-illustrated by the Ferreira case. Mrs. Ferreira requested an evaluation because of Peter's ADHD; while the DOE did provide her notice of her procedural safeguards when it refused to provide Peter with a comprehensive evaluation, there was no mech-

anism whereby she could challenge the results of the non-Chapter 36 test-an evaluation that was conducted as a direct result of her notifying the DOE that Peter suffered from a potentially disabling condition.

partment of Education Evaluation Request," and presumably knows that the notice refers to non-Chapter 36 evaluation. But when children are referred for evaluations by their schools, the form may not suffice to inform parents that their children are not receiving comprehensive special education tests.

■ The DOE has an affirmative duty to locate and identify potentially disabled children for evaluation. The failure to distinguish between Chapter 36 and non-Chapter 36 procedures has undermined its ability to meet that obligation. In light of the DOE's failure to develop clear standards for determining which students are to receive Chapter 36 testing, we hold that whenever individualized testing is contemplated, regardless of the DOE's subjective or objective beliefs about a child's disability, the parents must be informed that the child will be tested. The DOE must explain the distinction between Chapter 36 and non-Chapter 36 testing, and it must inform parents of how they can challenge both the DOE's decision to give or not give a Chapter 36 test and the DOE's ultimate conclusion on whether the child is disabled. *See* 20 U.S.C. § 1415(b)(1)(C)-(D); *Ash v. Lake Oswego Sch. Dist.*, 980 F.2d 585, 589 (9th Cir.1992).

Accordingly, we find the DOE's procedures for choosing between Chapter 36 and non-Chapter 36 tests inadequate. We remand the matter to the district court, and direct the entry of judgment in favor of Parents and Students on the question of whether the DOE's procedures for selecting non-Chapter 36 evaluations violate the IDEA and § 504.

### III. DOE Responses to Screening Committee Referrals

■ In addition to arguing that procedural protections should attach to the non-Chapter 36 test, Parents and Students appear to advance the much broader proposition that when a school screening committee requests that a student be evaluated, the DOE must comply. This contention must fail, as neither the IDEA nor § 504 require that educational agencies test all children for whom evaluations are requested. Nonetheless, because we hold that the procedural safeguards appli-

cable to Chapter 36 evaluations also apply to non-Chapter 36 tests, parents have the right to be notified of and to contest all pertinent decisions relating to the Chapter 36 or non-Chapter 36 evaluation of the child. Since our holding provides only that parents may follow up on their *own* suspicions of disability by challenging DOE inaction, a parent who wishes to contest the DOE's refusal to evaluate must initiate his or her own request for testing, which will then be subject to the IDEA's protections.

### IV. The DOE's Regulations for Implementing § 504

■ Parents and Students also allege that the DOE had no regulations in place for implementing § 504. However, because the regulations provide that § 504 requirements may be satisfied by complying with IDEA's procedural mandates, 34 C.F.R. § 104.36, the DOE's adoption of rules implementing the IDEA satisfies its burden under § 504. *See* Haw.Admin.R. 8–36–1.

### CONCLUSION

In this matter, we were called upon to resolve an ostensible tension between the educational discretion of school officials, and the rights of parents to remain informed of, and to participate in, educational decisions concerning their children. Both interests must be recognized. We conclude that, when a teacher refers a student to DOE for a non-Chapter 36 evaluation, the parents must be notified and given the procedural protections connected with a Chapter 36 evaluation. When a parent suspects a disability and requests an evaluation, DOE must notify the parents of its response and the means by which the parents can challenge it. If DOE undertakes a non-Chapter 36 evaluation in response to such a parental initiative, the procedural protections attached to a Chapter 36 evaluation must apply.

Our decision is not intended to sweep every individualized attention within the procedural requirements of the IDEA. These requirements do not come into play when a classroom teacher gives extra assistance to a student who is having difficulty, or when

students generally are subjected to a universal academic achievement test. Educators must be left free to educate. Even when individualized testing is contemplated, educators enjoy the discretion to evaluate, or to refuse to evaluate, children. In those cases, however, educators must inform parents of their decisions and afford them an opportunity to challenge the decisionmaking process.

Accordingly, we reverse the district court's grant of summary judgment in favor of the DOE, remand the matter to the district court and direct the entry of judgment for Parents and Students on the IDEA and § 504 claims. We affirm the grant of summary judgment in favor of the DOE as to the existence of rules implementing § 504.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Appellants are entitled to their fees and costs on this appeal. The determination of the amount of fees is transferred to the district court.