106 F.3d 406
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Robert CAMPBELL, Plaintiff-Appellant,
v.
James LAVERY; Internomics, Inc., a California corporation;
Amway, Inc., a Michigan corporation, Defendants-Appellees.
 No. 95-15967.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 8, 1996.
Decided Jan. 14, 1997.
 
 Before: WALLACE, SCHROEDER, ALARCON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Software programmer Robert Campbell ("Campbell") appeals pro se the district court's summary judgment dismissal of most of his claims prior to a bench trial in Campbell's breach of contract action against James Lavery ("Lavery"). We have jurisdiction under 28 U.S.C. § 1291. Reviewing de novo the grant of summary judgment, Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 116 S.Ct. 1261 (1996), we affirm.
 
 I.
 
 3
 Campbell and Lavery developed software used by salespeople working for Amway, Inc. ("Amway"). They did this both separately and in collaboration with each other. In 1983, Lavery began marketing two software modules that he had created, the Orders and Names modules (collectively, the "Lavery Software"), to Amway. In 1985, Cambell contributed approximately 20 lines of computer code to Lavery's Orders module. In 1984 and 1985, Campbell also authored two software modules, the Graphs and Menu modules (collectively, the "Campbell Software"). The Campbell Software was subsequently combined with the Lavery Software and sold to Amway distributors. In 1987, Amway and Lavery's company executed a licensing agreement for the Lavery/Campbell software combination (the "Combination Software Package"). In 1988, Campbell officially licensed the Campbell Software to Lavery's company in an agreement under which Campbell was to receive a $39 royalty for each copy of the Combination Software Package sold (the "1988 Agreement"). The 1988 Agreement was made retroactive to 1984. In 1991, Amway dropped the Campbell Software and paid Lavery $500,000 for the Lavery Software only.
 
 
 4
 Campbell sued Lavery, claiming that he was entitled to a portion of this amount under both copyright and contract theories. The district court found that Campbell had added approximately 20 lines of code to the Orders module and that this .26% contribution entitled Campbell to $1300 (.26% of the $500,000) on an unjust enrichment theory. It denied all other relief.
 
 
 5
 Campbell appeals, contending that he is entitled to a bigger share. He argues (1) that the Combination Software Package is a "joint work," (2) that his contribution of approximately 20 lines of code makes the Orders module a "joint work," and (3) that he is entitled to royalties under the 1988 Agreement because the agreement covers "derivative works" and the abridged version of the Combination Software Package sold to Amway in 1991 constitutes a "derivative work."
 
 II.
 
 6
 The Combined Software Package was not a joint work. A "joint work" is "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. The four modules developed by Campbell and Lavery were separate and distinct. They were also not interdependent, as evidenced by Amway's eventual use of only Lavery's Software for its sales needs. The Combined Software Package was a "collective work." 17 U.S.C. § 101 ("A 'collective work' is a work ... in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole.")
 
 III.
 
 7
 The Orders module was also not a "joint work" because there is no evidence in the record that Lavery ever viewed himself and Campbell as co-authors of the Orders software. In order for joint authorship to exist, each putative author must intend, at the time the contribution of each is created, that they be treated as joint authors. See Childress v. Taylor, 945 F.2d 500, 508 (2d Cir.1991) (joint authors must "entertain in their minds the concept of joint authorship, whether or not they underst[and] precisely the legal consequences of that relationship"). The Orders software was not a "joint work" because it was never intended to be a "joint work."
 
 IV.
 
 8
 The 1988 Agreement does entitle Campbell to receive the royalties for derivatives of the Combination Software Package. See 1988 Agreement, Section 4.1 ("Licensee shall pay Licensor the earned royalty of $39 per copy of the [Combination Software Package] or any derivitive[sic] work thereof."). A "derivative work" is "a work based upon one or more preexisting works, such as ... [an] abridgement.... A work consisting of ... modifications which, as a whole, represent an original work of authorship, is a 'derivative work.' " 17 U.S.C. § 101. While the software sold to Amway in 1991 is an "abridged" version of the Combination Software Package, the "modification" does not meet the threshold of originality required to make such abridgment an original work of authorship entitled to copyright protection as a derivative work.
 
 V.
 
 9
 For the foregoing reasons, we AFFIRM.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3