840 F.2d 667
 46 Fair Empl.Prac.Cas. 318,
45 Empl. Prac. Dec. P 37,824, 56 USLW 2555
 Vojislav PEJIC, Plaintiff-Appellant,
v.
HUGHES HELICOPTERS, INC.; McDonnell Douglas Corporation;
Electronic & Space Technicians Local 1553;
William Fuller; Robert Malconian; Dick
Kangis, Defendants-Appellees.
 No. 86-6521.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 5, 1988.
Decided Feb. 24, 1988.
 
 William D. Evans, Mathews and Evans, Los Angeles, Cal., for plaintiff-appellant.
 William V. O'Connor and Ralph S. LaMontagne, Jr., Kern and Wooley; Howard Z. Rosen, Posner & Rosen, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States, District Court for the Central District of California.
 Before FERGUSON, BEEZER and LEAVY, Circuit Judges.
 LEAVY, Circuit Judge:
 
 
 1
 Vojislav Pejic brought claims against Hughes Helicopters, Inc. (Hughes) and his union, Electronic and Space Technicians, Local 1553 (the Union), for discrimination based on national origin and age, breach of a collective bargaining agreement, breach of the duty of fair representation, and for breach of the Employee Retirement Income Security Act of 1974 (ERISA), following the termination of his employment with Hughes on June 7, 1984.
 
 
 2
 All but one of Pejic's claims were dismissed when the district court granted motions for judgment on the pleadings and summary judgment in favor of the defendants. At trial, the court dismissed Pejic's last claim for the ERISA violation. We affirm.
 
 FACTS AND PROCEDURAL HISTORY
 
 3
 In October 1975, Hughes hired Pejic as a machinist. At that time, he signed a card authorizing Hughes to deduct union dues from his paycheck. Section XXVI, paragraph A of the collective bargaining agreement (the agreement) requires an employee to pay union dues as a condition of employment:
 
 
 4
 Any employee, who on the effective date of this Agreement is a member of the Union shall, on and after the thirty-first (31st) day thereafter, as a condition of his/her employment, maintain his/her membership in the Union for the duration of this Agreement, to the extent of paying the periodic dues uniformly required as a condition of retaining membership in the Union. No employee shall be considered in default of the obligation to pay dues until after the Union has given him/her and the Employer notice in writing and he/she has failed to pay his/her dues within the period of fifteen (15) days following receipt of such written notice. In the event the employee fails to pay his/her dues within the above mentioned fifteen (15) day period, the Employer shall terminate his/her employment if so requested by the Union in writing.
 
 
 5
 From August 9, 1983, to October 17, 1983, Pejic took a two-month unpaid leave of absence due to a car accident. Hughes did not deduct his union dues since Pejic had no paycheck. Instead, Pejic paid reduced dues directly to the Union.
 
 
 6
 During Pejic's leave of absence, another employee, John Minasian, received a promotion. Pejic filed a grievance, claiming his seniority entitled him to the promotion under the agreement. The Union refused to process the grievance, claiming it interpreted the agreement to not allow promotions for employees on leave.
 
 
 7
 Hughes did not deduct Pejic's dues after he returned from his leave. Hughes requested Pejic to sign a new dues deduction authorization card, because it could not locate his original card. Pejic refused. Hughes' employee benefits representative explained to Pejic that dues were a condition of employment whether or not he chose to have Hughes deduct them. Nevertheless, from October 1983 until his termination on June 7, 1984, Pejic did not send dues to the Union. Pejic argues that because the card required him to revoke the deduction in writing, Hughes was obligated to pay the dues.
 
 
 8
 On January 1, 1984, the Union sent Pejic a notice that he owed dues for three months, and that he was subject to termination. A Union steward informed Pejic in February 1984 that he should send his dues directly to the Union. Pejic replied that Hughes was authorized to deduct the dues from his paycheck.
 
 
 9
 On February 10, 1984, the Union wrote Pejic that his dues were delinquent and that dues were a condition of employment. The Union requested payment no later than February 24, 1984. It informed Pejic it would request his termination if he did not pay. Although Pejic denies receiving this letter, he wrote the Union on February 21, 1984, complaining that his seniority rights were not protected and his grievance was not handled properly, an apparent reference to the Union's refusal to process his grievance regarding the Minasian promotion.
 
 
 10
 On February 28, 1983, the Union wrote to Pejic, inviting him to its office to discuss his concerns regarding membership and the grievance. Again, the Union informed Pejic that the agreement required him to pay dues. The Union stated it would request his termination if he failed to pay by March 16, 1984.
 
 
 11
 On March 27, 1984, the Union wrote Hughes to request Pejic's termination for failure to pay dues. On April 1, 1984, Pejic wrote to Hughes that he was bypassed wrongfully for promotion. He complained about the Union's representation and payment of dues:
 
 
 12
 Please inform the union that I am ready to pay my membership dues, as soon as they let me know that my grievance has been resolved on the basis of truth and facts. And that the union is ready to protect my human and seniority rights with the company, as they are legally required to do so.
 
 
 13
 On June 7, 1984, Hughes notified Pejic of his termination for failure to pay union dues.
 
 
 14
 Pejic filed an unfair labor practice charge with the National Labor Relations Board (NLRB) regarding his lack of promotion. He alleged the Union "failed and/or refused to process the grievance of Vojislav Pejic for arbitrary, invidious and capricious reasons." The NLRB decided the evidence was insufficient to demonstrate a violation of the National Labor Relations Act, and refused to issue a complaint against the Union. The NLRB stated: "It was concluded that the preponderance of the evidence indicates that you did receive notification that you would be terminated for failure to pay your dues.... Under these circumstances, the Union's request for your discharge, and the employer's consequent discharge of you did not constitute violations of the National Labor Relations Act."
 
 
 15
 Pejic filed a complaint with the Equal Employment Opportunity Commission (EEOC), claiming discrimination on the basis of national origin. Later, he filed an amended complaint which claimed discrimination on the basis of age. The EEOC issued a right to sue letter on January 31, 1985.
 
 
 16
 Pejic, who is of Serbian ancestry, was born in 1935 in Yugoslavia. In 1979, four years after he was hired at Hughes, Pejic transferred to a department that William Fuller supervised. They got along well until Fuller, whose niece is married to a Croatian, found out that Pejic was Serbian. Pejic claims Fuller's attitude toward him changed abruptly. He claims that thereafter, Fuller and Fuller's friends constantly harassed him at work.
 
 
 17
 Pejic contends animosity exists between Serbians and Croatians because certain Croatians supported Hitler during World War II, and massacred Serbians and Jews. The record supports these assertions.
 
 
 18
 Pejic's age discrimination claim was based on the promotions of five employees under the age of forty, while Pejic, who was over forty, was bypassed. Pejic never applied for any of the promotions.
 
 
 19
 In his second amended complaint, Pejic alleges: (1) Hughes and the Union discriminated against him on the basis of national origin and age in violation of section 703, Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. Sec. 2000e-2, and the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. Secs. 621-634; (2) Hughes breached its collective bargaining agreement in violation of section 301 of the Labor Management Relations Act of 1947 (LRMA); (3) the Union breached its duty of fair representation in violation of section 8(b) of the National Labor Relations Act (NLRA), as amended, 29 U.S.C. Sec. 158(b); and (4) Hughes failed to pay him benefits as required by ERISA, 29 U.S.C. Secs. 1132(1)(b), 1104(a)(1)(D) and 1140.
 
 
 20
 The district court granted the Union's and Hughes' motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on the claims of breach of the duty of fair representation and breach of the agreement, respectively, finding these claims time-barred because Pejic failed to file within the six-month statute of limitations set forth in section 10(b) of the NLRA, 29 U.S.C. Sec. 160(b). The district court also granted Hughes' and the Union's motions for summary judgment on the claims of discrimination based on national origin and age. At trial, the district court dismissed the ERISA claim based on its earlier rulings.
 
 DISCUSSION
 Standard of Review
 
 21
 A grant of a motion for summary judgment is reviewed de novo. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractor's Ass'n, 809 F.2d 626, 629 (9th Cir.1987). Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if the pleadings and supporting materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."
 
 
 22
 We review a dismissal under Federal Rule of Civil Procedure 12(c) de novo. Gearhart v. Thorne, 768 F.2d 1072, 1073 (9th Cir.1985).
 
 
 23
 An involuntary dismissal pursuant to Federal Rule of Civil Procedure 41(b) is viewed as a judgment in defendant's favor following a trial to the court. Great American Houseboat Co. v. United States, 780 F.2d 741, 746 (9th Cir.1986). Findings of fact are reviewed under the clearly erroneous standard; questions of law are reviewed de novo. Id.
 
 
 24
 Whether the Statute of Limitations is Tolled
 
 
 25
 Because Pejic brought a hybrid action[1] against his employer and the Union, the six-month statute of limitations set forth in section 10(b) of the NLRA, 29 U.S.C. Sec. 160(b), applies. DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 169-71, 103 S.Ct. 2281, 2293-94, 76 L.Ed.2d 476 (1983); Conley v. International Bhd. of Elec. Workers, 810 F.2d 913, 915 (9th Cir.1987). Pejic filed his complaint against Hughes and the Union after this six months' limit.
 
 
 26
 Pejic admits the rule of DelCostello applies. However, he claims the statute is equitably tolled when an unfair labor practices charge is filed with the NLRB.
 
 
 27
 This circuit decided this identical issue to the contrary in Conley. Conley holds that an unfair labor practices charge does not toll section 10(b), because such a charge is not a precondition for bringing an action under section 301. Conley, 810 F.2d at 915-16.
 
 
 28
 Consequently, Pejic's claims against Hughes for breach of the agreement and against the Union for breach of the duty of fair representation are time-barred.
 
 
 29
 Whether Pejic was Discriminated Against on the Basis of National Origin
 
 
 30
 It is unlawful for an employer or a labor organization to discriminate against, discharge, or cause the discharge of an employee due to national origin under section 703 of Title VII, 42 U.S.C. Section 2000e-2(a), (c).
 
 
 31
 Pejic's second amended complaint alleges that Hughes and the Union violated Title VII by discriminating against him because he was Serbian in that:
 
 
 32
 1. Hughes promoted another despite Pejic's seniority and the Union would not process his grievance;
 
 
 33
 2. the Union representatives conspired and assisted in Pejic's termination;
 
 
 34
 3. the Union denied his rights under the agreement and acquiesced in his termination; and
 
 
 35
 4. Hughes failed to pay his retirement benefits.
 
 
 36
 Pejic's complaint describes incidents of harassment at work. He claims they are evidence of the discriminatory motive which led to his non-promotion and discharge.
 
 
 37
 This claim may be analyzed under the "disparate treatment model," which applies when "an individual [has been] singled out and treated less favorably than others similarly situated on account of [national origin]." Gay v. Waiters' & Dairy Lunchmen's Union, 694 F.2d 531, 537 (9th Cir.1982). Direct or circumstantial proof of discriminatory motive is required. Spaulding v. University of Wash., 740 F.2d 686, 700 (9th Cir.), cert. denied, 469 U.S. 1036, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984), overruled on other grounds, Atonio v. Wards Cove Packing Co., 810 F.2d 1477 (9th Cir.1987) (en banc).
 
 
 38
 This circuit has described the respective burdens of producing evidence in disparate treatment cases:
 
 
 39
 In order to prevail in a Title VII disparate treatment case, a plaintiff must first establish a prima facie case of discrimination. The burden of production then shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment decision. If the defendant carries its burden, the plaintiff is then afforded an opportunity to demonstrate that the " 'assigned reason' was 'a pretext or discriminatory in its application.' "
 
 
 40
 Diaz v. American Tel. & Tel., 752 F.2d 1356, 1358-59 (9th Cir.1985) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 807, 93 S.Ct. 1817, 1826-27, 36 L.Ed.2d 668 (1973)) (emphasis in Diaz ). However, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Texas Dep't. of Comm. Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); Casillas v. United States Navy, 735 F.2d 338, 342 (9th Cir.1984). " '[T]he district court must decide which party's explanation of the employer's motivation it believes.' " Casillas, 735 F.2d at 342 (quoting United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 717, 103 S.Ct. 1478, 1483, 75 L.Ed.2d 403 (1983)). This court reverses that factual determination only if it is clearly erroneous. Casillas, 735 F.2d at 342.
 
 
 41
 Specifically, the issue is whether Pejic established a "prima facie case of discrimination" to create a genuine issue of material fact sufficient to foreclose summary judgment. See Fong v. American Airlines, Inc., 626 F.2d 759, 761 (9th Cir.1980). The prima facie case is established by a preponderance of the evidence. Burdine, 450 U.S. at 252-53, 101 S.Ct. at 1093; Casillas, 735 F.2d at 343.
 
 
 42
 This court has set forth the elements of a prima facie case of discrimination in the employment contexts of discharge and promotion. For discriminatory promotion, the plaintiff must show:
 
 
 43
 1. he is a member of a class protected by Title VII;
 
 
 44
 2. he was qualified for the position sought;
 
 3. he was denied the promotion; and
 
 45
 4. individuals outside of the protected class[2] were promoted.
 
 
 46
 Lynn v. Regents of Univ. of Cal., 656 F.2d 1337, 1341 (9th Cir.1981), cert. denied, 459 U.S. 823, 103 S.Ct. 53, 74 L.Ed.2d 59 (1982). For discriminatory discharge, the plaintiff must show:
 
 
 47
 1. he was within the protected class;
 
 
 48
 2. he was performing his job well enough to rule out the possibility that he was fired for inadequate job performance; and
 
 
 49
 3. his employer sought a replacement with qualifications similar to his own, thus demonstrating a continued need for the same services and skills.
 
 
 50
 Sengupta v. Morrison-Knudsen Co., 804 F.2d 1072, 1075 (9th Cir.1986).
 
 
 51
 Pejic must first show that Serbians are members of a protected class under "national origin." Title VII does not define that term. Courts note the legislative history concerning the meaning of national origin is "quite meager." Espinoza v. Farah Mfg. Co., 414 U.S. 86, 88, 94 S.Ct. 334, 336, 38 L.Ed.2d 287 (1973); see also Garcia v. Gloor, 618 F.2d 264, 268 n. 2 (5th Cir.1980), cert. denied, 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981); Roach v. Dresser Indus. Valve & Instrument Div., 494 F.Supp. 215, 216 (W.D.La.1980).
 
 
 52
 Legislative history provides some guidance. Representative Roosevelt stated: "May I just make very clear that 'national origin' means national. It means the country from which you or your forebears came from. You may come from Poland, Czechoslovakia, England, France, or any other country." 110 Cong.Rec. 2549 (1964).
 
 
 53
 The Supreme Court stated: "[t]he term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came."
 
 
 54
 Espinoza, 414 U.S. at 88, 94 S.Ct. at 336.
 
 
 55
 Hughes states that Serbians and Croatians are simply ethnic groups residing in the modern nation of Yugoslavia, and asserts the term "national origin" does not include such ethnic distinctions. Although Hughes admits Serbia was a country, it points out Serbia existed as a nation for only forty years and has been extinct for seventy years--long before Pejic was born or the animosity of World War II developed--which should preclude protection for Serbians under Title VII.[3]
 
 
 56
 Despite Hughes' assertions, the legislative history and the Supreme Court both recognize that "national origin" includes the country of one's ancestors. Unless historical reality is ignored, the term "national origin" must include countries no longer in existence. See Roach, 494 F.Supp. at 218 (holding that "Cajuns" are protected under Title VII even if the colony they settled, Acadia, (now Nova Scotia) no longer exists). Given world history, Title VII cannot be read to limit "countries" to those with modern boundaries, or to require their existence for a certain time length before it will prohibit discrimination. Animus based on national origin can persist long after new political structures and boundaries are established. Therefore, Serbians are a protected class, and Pejic meets the first requirement for a prima facie case.
 
 
 57
 However, Pejic fails to meet the other requirements for a prima facie case. With respect to promotion, he provides no evidence he was qualified outside of his seniority. Section XIII, paragraph F of the agreement requires other qualifications. It states, in part:
 
 
 58
 In connection with promotions to openings in higher hourly paid classifications, present employees with the most seniority in the job classification and in the department from which the promotion is made, shall receive first consideration provided they possess the qualifications, ability and physical fitness to perform the job, and their production, conduct and attendance records are satisfactory.
 
 
 59
 Further, Pejic admits he did not apply for promotion. The agreement appears to require such an application.[4] If Pejic never applied, it is difficult to infer he was denied the promotions.
 
 
 60
 With respect to Pejic's discharge, no evidence is provided regarding his job performance, or that he was replaced with someone with similar qualifications. Even if Pejic had such evidence, Hughes and the Union present a legitimate, nondiscriminatory reason for his termination: the agreement required an employee to pay dues as a condition of employment, and Pejic did not pay them. Moreover, the Union demonstrated it requested termination of employees who failed to pay dues regardless of race or national origin.
 
 
 61
 Pejic took the risk he would be terminated by refusing to sign a new authorization card and by failing to pay dues to the Union. Section XXVI, paragraph A of the agreement places such responsibility squarely on the employee. In this context, Pejic's argument that Hughes was responsible because he never revoked its authorization to deduct his dues is meritless. His contentions do not create a genuine issue of material fact that Hughes' reason is a pretext.
 
 
 62
 Failure of the Union to Process Pejic's Grievance
 
 
 63
 Pejic alleges the Union acted deliberately to deny him "the benefits of his collective bargaining agreement and failed to administer said agreement and the rights secured thereunder." The Union refused to process his grievance over the promotion of Minasian.
 
 
 64
 To the extent this claim alleges a breach of the duty of fair representation, it is time barred. To the extent it alleges discrimination in promotion based on national origin, assuming Pejic has established a prima facie case, the Union provides a legitimate, non-discriminatory reason for its failure to process this grievance. Its long standing interpretation of section XIII, paragraph F excludes those on leave from eligibility for promotion. Pejic presents no evidence that this reason is pretextual; he states only that he was unaware of the policy. Moreover, the Union showed it processes grievances without respect to race or national origin, and that it previously processed a grievance for Pejic. The district court decided the Union's reason for its failure to process the grievance was legitimate. That decision is not clearly erroneous.
 
 Age Discrimination
 
 65
 Pejic, who is over forty, asserts he was discriminated against on the basis of age because five individuals under the age of forty were promoted over him.
 
 
 66
 In this circuit, the criteria for claims under Title VII are also applicable to claims of disparate treatment arising under the ADEA.[5] Palmer v. United States, 794 F.2d 534, 537 (9th Cir.1986). The allocation of burdens of proof and presentation in an ADEA case are identical to those of Title VII. Limongelli v. Postmaster Gen. of the United States, 707 F.2d 368, 372 (9th Cir.1983); see also Foster v. Arcata Assocs., Inc., 772 F.2d 1453, 1458-59 (9th Cir.1985), cert. denied, 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986). The plaintiff has the ultimate burden of proving that age was a "determining factor" in the employer's allegedly unlawful conduct. Douglas v. Anderson, 656 F.2d 528, 531 (9th Cir.1981).
 
 
 67
 To establish a prima facie case of age discrimination, Pejic must show:
 
 
 68
 1. he was a member of a protected class;
 
 
 69
 2. he applied for a position for which he was qualified; and
 
 
 70
 3. he was denied a promotion which was given to a younger person.
 
 
 71
 Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir.1983).
 
 
 72
 No civil action under the ADEA may be commenced until sixty days after a charge alleging unlawful discrimination has been filed with the EEOC. Such a charge must be filed within 180 days after the alleged unlawful practice occurred. If the unlawful practice occurs in a state with an agency authorized to seek or grant relief from the discriminatory practice, the charge must be filed within 300 days of the unlawful practice, or within thirty days after receipt of notice of termination of proceedings, whichever is earlier. 29 U.S.C. Sec. 626(d). This circuit treats this notice requirement as a statute of limitations. Dempsey v. Pacific Bell Co., 789 F.2d 1451, 1453 (9th Cir.1986); Naton v. Bank of Cal., 649 F.2d 691, 696 (9th Cir.1981).
 
 
 73
 Pejic originally filed his Title VII charge on July 31, 1984. He did not amend it to add the ADEA claim until January 24, 1985, well after either time limit in 29 U.S.C. Sec. 626(d) had passed. However, he asserts his age discrimination claim arose from the same subject matter as his claim based upon national origin, and that therefore it relates back to his original filing with the EEOC.
 
 
 74
 Title VII and ADEA claims arise from entirely distinct statutory schemes. Pejic's original charge contains no hint of age discrimination. His ADEA claim should be time-barred. See Rizzo v. W.G.N. Continental Broadcasting Co., 601 F.Supp. 132, 134-35 (N.D.Ill.1985) (a sex discrimination charge may not be inferred from an age discrimination charge; therefore an amended claim filed after the time limit will not relate back to the original charge).
 
 
 75
 If Pejic's claim is not time-barred, he still fails to establish a prima facie case of age discrimination. No evidence shows he was qualified for the positions. He admits he never applied for them.
 
 The ERISA Claim
 
 76
 As a result of his alleged wrongful termination, Pejic states Hughes failed to pay his employee pension benefits in accordance with its Savings Plan as ERISA requires. Because there was no wrongful termination, this claim properly was dismissed. Pejic forfeited his non-vested employer contributions at the time he was terminated.
 
 CONCLUSION
 
 77
 Pejic's claims of breach of contract and breach of the duty of fair representation are time-barred. He fails to establish a prima facie case of discrimination based upon national origin for his non-promotion or termination. His claim of age discrimination is time-barred; assuming arguendo it was not, Pejic has not established a prima facie case. The rulings of the district court are AFFIRMED.
 
 
 
 [1]
 In hybrid actions, the employee sues the union and the employer, alleging the employer unfairly treated him or her, and that the union breached the duty of fair representation. Conley v. International Bhd. of Elec. Workers, 810 F.2d 913, 915 (9th Cir.1987)
 
 
 [2]
 In this case, non-Serbians
 
 
 [3]
 Serbia, an area of central Europe mostly peopled by Slavs, was an important state from about 1050 until 1389, when it was conquered by the Turks. It achieved complete independence in 1878 and was an important state before and after World War I, with international recognition. In 1918, it combined with several other principalities to form the "Kingdom of the Serbs, Croats and Slovenes." In 1928, this kingdom was renamed the "Kingdom of Yugoslavia." In 1945, its title changed to the "Federal Peoples' Republic of Yugoslavia." Ivancevic v. Artukovic, 211 F.2d 565, 566-68 (9th Cir.), cert. denied, 348 U.S. 818, 75 S.Ct. 28, 99 L.Ed. 645 (1954)
 Regardless of their incorporation into modern Yugoslavia, the Serbians and Croations have a long history of animosity, particularly based on religious differences. During World War II, Croatia was itself a separate state.
 
 
 [4]
 Paragraph P in section XIII states with respect to promotion:
 It is agreed that the Company will maintain a listing of open personnel Requisitions in the Transfer Office, Industrial Relations Department. Transfer Request Forms will be made available to employees in the Transfer Office and other locations. The other locations where this information is available will be given to the Union for posting on their Union Bulletin Boards. This is in addition to the upgrade and promotion provisions of Paragraph F.
 
 
 [5]
 The ADEA prohibits discrimination in employment against individuals between the ages of 40 and 70. 29 U.S.C. Sec. 631(a)