125 F.3d 859
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Josephine ROSS; Linda Eichorn, Plaintiffs-Appellants,
v.
Dan GLICKMAN, Acting Secretary, United States Department of
Agriculture, Soil Conservation Service a/k/a
Richard Rominger, Defendant-Appellee.
 No. 96-16527.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 18, 1997.**
Filed Sept. 30, 1997.
 
 Appeal from the United States District Court for the Eastern District of California William B. Shubb, District Judge, Presiding
 Before ALDISERT,*** CHOY, and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Josephine Ross and Linda Eichorn (collectively, "appellants") appeal the district court's grant of summary judgment in favor of the Secretary of the United States Department of Agriculture Soil Conservation Service ("DOA") in their discrimination and retaliation action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 STANDARD OF REVIEW
 
 3
 We review de novo the district court's grant of summary judgment. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 116 S.Ct. 1261 (1996). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact. Id.
 
 
 4
 Where the nonmoving party will have the burden of proof at trial, the moving party can prevail merely by "pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In opposing summary judgment, a party is not entitled to rely on the allegations of her complaint but, "by affidavits or otherwise ..., must set forth specific facts showing that there is a genuine issue for trial...." Fed.R.Civ.P. 56(e); see also S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co. Inc., 690 F.2d 1235, 1238 (9th Cir.1982).
 
 In a Title VII claim:
 
 5
 [A] plaintiff must first establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.
 
 
 6
 Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir.1994) (citation and internal quotations omitted); see also Steiner v. Showboat Operating Co., 25 F.3d 1459, 1464-65 (9th Cir.1994), cert. denied, 513 U.S. 1082 (1995) (applying same order and allocation of proof in retaliation claim).
 
 DISCUSSION
 
 7
 I. Ross's Claim of Failure to Hire for GS-12 Human Resources Officer Position
 
 
 8
 Ross contends that there is a genuine issue of material fact as to whether the DOA's failure to hire her for a GS-12 Human Resources Officer position in February 1992 was motivated by discrimination. We disagree.
 
 
 9
 To establish a prima facie case for discrimination in the context of promotion or selection, a plaintiff must show: (1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open after her rejection and the employer continued to seek applications from other people with qualifications similar to plaintiff's. Warren, 58 F.3d at 441. The fourth element also can be met by showing that an individual outside the protected class was hired. Pejic v. Hughes Helicopters, Inc., 840 F.2d 667, 672 (9th Cir.1988).
 
 
 10
 Although Ross successfully establishes a prima facie case of discrimination--she is a Hispanic woman who applied for, was at least arguably qualified for, and was rejected for a position that was filled by a non-minority woman--she fails to demonstrate that the DOA's stated reason for hiring someone else is merely a pretext for a discriminatory motive.
 
 
 11
 The DOA advertised nationwide for this position and received approximately 25 applications, including one from Ross. A white female was selected from these applicants. Although the final hiring decision was made by Pearlie Reed, the agency's senior official in California during the relevant times, eleven members of Reed's principal staff reviewed the applications. Eight staffers ranked the other woman as one of their top two choices, whereas only one of the staffers even recommended Ross for the position, ranking her third. ER 363-370. On the basis of his staff's recommendations and because her qualifications were "head and shoulders" above Ross', Reed selected the other, non-minority woman for the position.
 
 
 12
 Because the DOA successfully articulates a legitimate reason for its hiring decision, the burden shifts back to Ross to produce specific facts evidencing a discriminatory motive or that the explanation given is not credible. See Lindahl v. Air France, 930 F.2d 1434, 1438 (9th Cir.1991). This evidence must be sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that the DOA's decision not to hire her was racially motivated.
 
 
 13
 The evidence Ross submits includes an allegation that in January of 1992 Reed made a racial comment to her, namely, that his staff did not like Mexicans, Mexican women, and in particular did not like Ross. In her affidavit she also states that although the DOA did employ Hispanic staff at levels relevant for promotion, see ER 627-36, during her "tenure of employment, no Hispanic female was hired or promoted to a management level position." ER 560:3-4.[1]
 
 
 14
 In determining whether the employer's stated reason for not hiring is mere pretext for discrimination, the Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), enumerated factors for a court to consider such as the employer's treatment of the plaintiff during the term of employment, the employer's reaction to the plaintiff engaging in protected activity, and the employer's "general policy and practice with respect to minority employment." Id. at 804-05. Here, there is ample evidence of Reed's positive and supportive treatment of Ross during her employment. He promoted her on numerous occasions, including once that was not authorized by Washington D.C. ER 357-59. As for Reed and the DOA's reaction to her filing complaints with the EEOC about Reed, there is evidence that after these complaints Reed promoted Ross, asked her to serve on a committee for the Federal Women's Program, and rated her work on this committee and others as "superior." ER 218-20, 240, 335. Finally, the record is replete with instances of Reed's active efforts to recruit and promote minorities and women, a fact to which Ross herself admits. SER 3-4.
 
 
 15
 We find that the evidence Ross submitted is not sufficient to overcome her burden of rebutting the DOA's stated reason for not hiring her. Cf. Warren, 58 F.3d at 443 (holding that plaintiff met burden by submitting evidence that non-minorities who were hired were less qualified than plaintiff, employer's stated reasons for not hiring plaintiff were based on subjective criteria that were particularly susceptible to discriminatory abuse, employer had made derogatory comments about Hispanics, and plaintiff submitted evidence of employer's general pattern of discrimination); Lindahl, 930 F.2d at 1436 (finding plaintiff raised genuine issue that employer's stated reason was not credible by submitting evidence that employer first gave vague explanation for promotion decision and that it took employer four months to come up with specific reasons, that qualifications for which employer allegedly promoted the other were not clearly related to the position, that employer admitted the promoted employee was not well liked by the group although employer stated "leadership abilities" as a reason for promotion decision, and that the promoted employee was the most junior applicant).
 
 
 16
 II. Ross's Claim of Failure to Promote to GS-12 Employee Development Specialist
 
 
 17
 Ross contends that there is a genuine issue of material fact as to whether the DOA's failure to promote her to a GS-12 level in November 1991 was discriminatory. However, she fails to establish a prima facie case for this claim because she does not show that there was a GS-12 Employee Development Specialist position available in November 1991 nor does she allege that an individual outside the protected class was promoted to such a position. See Warren, 58 F.3d at 441-42 (noting that second prong of prima facie case requires employee to show "she applied and was qualified for a job for which the employer was seeking applicants").
 
 III. Appellants' Claims of Retaliation
 
 18
 Ross and Eichorn claim that they were discriminated against in retaliation for engaging in protected activity, namely, filing a discrimination complaint and supporting papers with the Equal Employment Opportunity Commission.
 
 
 19
 To make a prima facie case of retaliation, a plaintiff must show that: (1) she was engaged in protected activity; (2) she was thereafter subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action. See Wallis, 26 F.3d at 891. Adverse employment action occurs when an employee is "demoted, or put in a worse job, or given any additional responsibilities." Steiner, 25 F.3d at 1465 n. 6.
 
 
 20
 Here, Ross claimed that the DOA's transfer of her employee development position from the general administrative section to the human resources section in September 1992 was retaliatory and mere pretext to "reduce [her] duties and diminish [her] scope of authority." ER 559:18-19. However, she offers no evidence that the transfer of position between departments was motivated by discrimination or that her alleged decrease in responsibilities was due to anything other than friction between Ross and her new supervisor. See ER 689 # 3. A transfer without a decrease in pay or grade does not constitute adverse employment action. See Nidds v. Schindler Elevator, 113 F.3d 912, 919 (9th Cir.1997) (declining to view transfer to another department as an "adverse employment action"); Steiner, 25 F.3d at 1465 n. 6 (questioning whether a transfer to a different shift was an adverse employment action). Thus Ross fails to establish her prima facie case.
 
 
 21
 Eichorn claims she was retaliated against for writing a letter to the EEOC in support of Ross' complaint of discrimination. She claims she was spoken to very harshly and humiliated by Reed at a meeting with other employees. However, this is not enough to establish a prima facie case of retaliation because no "adverse employment action" resulted from this incident.
 
 
 22
 Eichorn also claimed retaliation because she was not selected for a new position with a higher promotion potential than her current position as Office Automation Assistant. While Eichorn was on disability leave, the DOA underwent reorganization and issued a vacancy announcement for a new Office Automation Assistant position, with different job responsibilities, created as a result of the reorganization. Eichorn received the vacancy announcement but did not apply because she assumed that she would automatically be promoted. Eichorn has not been subjected to an adverse employment action because she did not apply for the position in question and because she was placed in a position with the same grade and pay as the position that she held prior to the reorganization. See id; see also Pejic, 840 F.2d at 673 (finding it hard to infer that plaintiff was denied a promotion where plaintiff did not apply for the position).
 
 
 23
 IV. Appellants' Claims of Hostile Environment
 
 
 24
 Ross and Eichorn contend the district court erred in granting summary judgment on their claim that they were subjected to a hostile work environment because DOA employees "shunned" them in retaliation for filing the EEOC complaints. This contention lacks merit.
 
 
 25
 An employee may state a claim under Title VII for a hostile work environment. See Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1109 (9th Cir.1991) (noting that a plaintiff may show violation of Title VII "by proving the existence of a hostile work environment"); Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir.1995) (setting forth hostile-environment test resulting from sexual harassment). In order to establish the existence of a hostile work environment, appellants must show evidence of "severe or pervasive and unwelcome verbal or physical harassment because of [their] membership in a protected class." Id.
 
 
 26
 Here, Eichorn claims Reed "belittled" her at a meeting, at which he referred to the EEOC letter she wrote. Furthermore, Ross and Eichorn state that the office staff shunned them, only speaking to them curtly and abruptly and that this affected their ability to work and reduced their overall productivity. But they do not offer any specific facts supporting these claims. Such behavior is not "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Fuller, 47 F.3d at 1527-28 (finding hostile environment during period where co-worker ran plaintiff off the road, forcibly extracted her unlisted telephone number, called her and threatened to kill himself but finding lack of hostile environment during period of infrequent contact); see also Steiner, 25 F.3d at 1463 (finding hostile environment where supervisor's ongoing comments and conduct were "sexually explicit, offensive, highly derogatory, and publicly made").
 
 
 27
 AFFIRMED.
 
 
 
 **
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a); 9th Cir. R. 34-4
 
 
 **
 * The Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 It is unclear what level constitutes "management level" but the record indicates that Hispanics were employed as high as the GS-12 level and that African Americans, Native Americans, and Asian Pacific Islanders were employed at the GS-12 level and above. See ER 627