**F I L E D**

**UNITED STATES COURT OF APPEALS**

**AUG 20 2003**

**TENTH CIRCUIT**

RICHARD RODRIGUEZ,

     Plaintiff-Counter-
     Defendant-Appellant,

v.

MILLER WASTE MILLS, INC., d/b/a
RTP Company,

     Defendant-Counter-
     Claimant-Appellee.

No. 02-1316
(District of Colorado)
(D.C. No. 00-B-1275 (OES))

**ORDER AND JUDGMENT**[*]

Before **EBEL**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **MURPHY**, Circuit Judge.

## I.  INTRODUCTION

Richard Rodriguez, an Hispanic male over the age of forty, brought suit against his employer, RTP Company ("RTP"), alleging discrimination based upon age and national origin/race.  The district court granted summary judgment in

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

favor of RTP, concluding as follows: (1) Rodriguez's age discrimination claim failed at both the *prima facie* and pretext stages of the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); and (2) Rodriguez's national origin/race discrimination claim failed because he failed to exhaust his administrative remedies and, in the alternative, because he failed to create a genuine issue of material fact as to pretext. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and Fed. R. Civ. P. 54(b). Because Rodriguez has not created a genuine issue of material fact as to pretext, we **affirm** the district court's grant of summary judgment to RTP on Rodriguez's age discrimination claim. This court **vacates** that portion of the district court order granting summary judgment to RTP on Rodriguez's national origin/race discrimination claim and **remands** the matter to the district court to dismiss the claim for lack of subject matter jurisdiction.

## II. BACKGROUND

*A. Factual Background*

RTP provides custom compounding of thermal plastics to injection molders and original equipment manufacturers. It hired Rodriguez as a sales engineer in 1991, when Rodriguez was forty-nine years old. At that time, fifteen out of the twenty employees in the sales organization were over the age of forty.

During his seven-year tenure with RTP, Rodriguez received numerous written complaints from his managers regarding his failure to communicate in a manner consistent with company policy. Specifically, Rodriguez consistently failed to (1) submit monthly activity and trip/call reports, (2) send copies of customer correspondence to sales management, (3) call RTP to check voicemail messages each day, and (4) work with the regional manager when submitting price quotes that varied from RTP's officially listed prices. In 1995, Rodriguez was informed that he was not meeting RTP's "minimum standards" because of his failure to communicate with management. He was placed on a job improvement plan that required weekly conference calls to verify that he was following prescribed procedures. Nevertheless, the problems persisted.

In addition to his problems following company policy regarding communications with sales management, there was some concern that Rodriguez was not growing his sales territory during his first few years with RTP. In 1993, Rodriguez received a warning regarding his sales but was not fired. Rodriguez's sales increased in 1994 and 1995, and from 1995 through 1997 his sales exceeded $5,000,000. Rodriguez was one of several sales engineers who received awards in those years for achieving sales of that level.

In 1997, RTP again became concerned about Rodriguez's sales. According to RTP, Rodriguez's sales were flat and if the largest account he served was not

considered, his sales were actually declining. In response, RTP drafted a warning letter to Rodriguez noting his flat sales and again noting his failure to comply with RTP's communications policies. The letter was never sent, however, because Rodriguez's sales picked up.

In addition to the missteps and concerns set out above, RTP also alleges that Rodriguez exhibited extremely poor business judgment. In 1995, Rodriguez sent a letter to a customer mistakenly advising it that he was working on the same plastics formula for another customer. The customer threatened legal action, accusing RTP of divulging its confidential product information. The matter had to be resolved by RTP's upper management.

In 1997, Rodriguez drove a company car without using seat belts, parked in a customer's no-parking zone, and entered through the customer's back door without signing in as a visitor. Rodriguez then walked through the customer's production area without wearing safety glasses. According to Rodriguez, the customer never complained directly to RTP. He further asserts that he had permission to enter through the back door and the safety glasses requirement was a change in the customer's policy. Nevertheless, Rodriguez's supervisor, who had accompanied Rodriguez on the visit, was "uncomfortable with the trip."

In 1998, Rodriguez was involved in an incident of poor judgment that RTP claims was the "straw that broke the camel's back." A potential customer, Harold

Beecroft, asked service representatives at RTP's headquarters to provide him with some product samples. Based on his prior dealings with Beecroft,[1] Rodriguez believed that Beecroft would drain RTP's resources by requesting free samples without placing an order. Although no one had complained about Beecroft's request for samples, Rodriguez wrote a letter to two RTP employees, dated October 26, 1998, instructing them not to work with Beecroft or provide samples to him. In the memo, Rodriguez stated that Beecroft "will extract all information from RTP and tax our internal resources for his personal gain without benefit to RTP." Rodriguez also accused Beecroft of giving RTP's product formulation to RTP's principal competitor. Rodriguez then faxed a copy of the memo directly to Beecroft.

Twelve hours later, Beecroft responded by threatening legal action against RTP if it persisted in accusing him of giving RTP's formula to the competitor. Beecroft's response was much stronger than Rodriguez expected. Rodriguez then sent a follow-up memo to Beecroft without first notifying his supervisor.

---

[1]Rodriguez was apparently familiar with Beecroft through Rodriguez's independent company, Rodco Systems, which had provided engineering services to Beecroft in connection with the construction of a molding tool needed for the use of the RTP plastic materials. In his brief on appeal, Rodriguez asserts that he was aware "Mr. Beecroft's company was in debt and couldn't pay its bills." The record reveals that RTP has filed a counter-claim against Rodriguez for improperly soliciting business opportunities belonging to RTP. This court nevertheless has jurisdiction because the district court entered a Rule 54(b) certification.

Rodriguez's follow-up memo chided Beecroft for being uncommunicative and continued to insist that Beecroft would tax RTP's internal support structure.

Soon after the Beecroft incident, Rodriguez was fired. He was informed of his termination during two telephone calls. According to Rodriguez, he was first told that he was terminated for failing to send copies of the Beecroft memos to his supervisors. After Rodriguez told his manager that he had *mailed* copies to him, he alleges he was told that he was terminated because the company was "cutting back." RTP denies that Rodriguez was told that the company was cutting back and, instead, asserts that its stated reasons for the dismissal have consistently related to Rodriguez's failure to follow company policy concerning communication with supervisors, not selling as much product as managers expected, and poor judgment. The written letter of termination sent to Rodriguez by RTP one week later indicates as follows: "You have not been singled out but were dismissed for a variety of reasons, including unsatisfactory job and sales performance, unprofessional behavior towards a number of people including internal, customers and suppliers, and failure to follow directions given to you by your Manager, etc." A thirty-six-year-old white male replaced Rodriguez.

After his termination, Rodriguez filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On the intake form, Rodriguez alleged age and national origin/race discrimination. However, the

charge prepared by the EEOC staff person identified the charge as only age discrimination. Rodriguez subsequently indicated to the EEOC in a letter that he wanted the charge to include a national origin/race claim. In a responsive letter, Wendy Reiner, an Investigator with the EEOC, indicated as follows:

> [I]t is important that you know that when you amend your charge to include National Origin/Hispanic as a basis, the issues you raise will be limited to those that occurred within 300 days of the date you originally filed the charge. I have calculated this time frame to be October 22, 1998 through August 18, 1999. Thus, any incidents that occurred prior to October 22, 1998, cannot be included as they are untimely under our 300 day statute of limitations. To this end, enclosed please find a copy of your letter on which I have indicated what further information I will need in order to draft the amended charge.
> . . . .
> Again, thank you for your continuing cooperation. If you could provide the requested information on or before March 6, 2000, I would greatly appreciate it. The data may be faxed to me if necessary . . . . Further, if you have any questions or concerns, please feel free to call me . . . .

The record does not contain any further correspondence between Rodriguez and Reiner and no amended charge raising national origin/race discrimination was ever filed.

B. Procedural Background

The district court utilized the now-familiar burden shifting scheme from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to evaluate Rodriguez's claims of age and national origin/race discrimination. With respect to the age discrimination claim, the district court concluded that Rodriguez failed to

establish a *prima facie* case of age discrimination because "no reasonable juror could conclude that an employee who sent such a letter [i.e., the Beecroft letter] to a potential customer without management approval in the circumstances present here was performing his job in a satisfactory way." In the alternative, the court concluded that Rodriguez had failed to show that RTP's decision to fire him after he sent the Beecroft letter was a pretext for age discrimination. With respect to the nation origin claim, the court concluded that Rodriguez failed to file the requisite charge with the EEOC and dismissed the claim for failure to exhaust administrative remedies. In the alternative, the district court concluded that the national origin/race claim failed because Rodriguez could not show RTP's decision to terminate him in response to the Beecroft letter was pretextual.

## III. STANDARD OF REVIEW

This court reviews *de novo* the district court's grant of summary judgment, viewing the record in the light most favorable to the party opposing summary judgment. *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). This court looks to the applicable substantive law when evaluating whether a fact is material.

*Revell v. Hoffman*, 309 F.3d 1228, 1232 (10th Cir. 2002). "To determine whether a dispute is genuine, we must consider whether a 'reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## IV. ANALYSIS

*A. Age Discrimination Claim*

The three-step analytical framework established by the Supreme Court in *McDonnell Douglas* applies to age discrimination claims. *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002). Under the first step, a plaintiff must prove a *prima facie* case of discrimination. *Id.*[2] If the plaintiff carries his burden of establishing a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action. *Id.* If the defendant does so, the burden shifts back to the plaintiff to show that his age "was a determinative factor in the defendant's employment decision, or show that the defendant's explanation for its action was merely pretext." *Id.*

---

[2]To establish a *prima facie* case of age discrimination, a plaintiff must show that: (1) he is within the protected age group, (2) he was doing satisfactory work, (3) he was discharged, and (4) his position was filled by a younger person. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 529 (10th Cir. 1994).

The district court concluded that Rodriguez had failed to establish either a *prima facie* case or that RTP's stated reasons for the termination were pretextual. With regard to the question of pretext, the district court concluded as follows:

> Mr. Rodriguez argues that during the last years of his employment RTP had established a pattern of hiring younger employees who were compensated less than the older RTP employees. As an example, Mr. Rodriguez argues that Scott Carrell, who replaced Mr. Rodriguez, was hired at the same $50,000 salary but instead of receiving a commission structure, which amounted to approximately $100,000 of additional income, Mr. Carrell was only guaranteed a $20,000 annual bonus. However, the evidence indicates that Mr. Carrell was initially hired for a different position than Mr. Rodriguez. Mr. Carrell was hired as a National Accounts Manager, while Mr. Rodriguez was a sales engineer. Moreover, Mr. Carrell was hired at a base salary of $60,000. Additionally, after Mr. Rodriguez was terminated and Mr. Carrell took over the sales engineer duties, he received the typical sales engineer structure for commissions in addition to his $60,000 base. Therefore, Mr. Carrell actually had the opportunity to receive more compensation than Mr. Rodriguez.
>
> Next, Mr. Rodriguez argues that RTP's proffered reason is purely pretextual because similarly situated younger employees were not terminated. RTP argues that the younger individuals identified by Mr. Rodriguez were not similarly situated. I agree with RTP.
>
> Mr. Rodriguez argues that similarly situated younger employees were treated more favorably because they were not terminated. Mr. Rodriguez discusses employees who had serious traffic incidents, who did not turn in monthly reports in a timely manner, and those who failed to make their budgets. However, he failed to identify any younger employee who displayed poor business judgment similar to when he sent an inappropriate memo to a potential customer which resulted in the customer threatening litigation. Therefore, Mr. Rodriguez has failed to present evidence that RTP's proffered reason for his termination was a pretext for age discrimination. . . .

Dist. Ct. Order at 10-11 (record citations omitted).

Upon *de novo* review of the district court's order and the entire appellate record, as well as a thorough consideration of the parties' briefs and contentions on appeal, this court affirms the district court's grant of summary judgment in favor of RTP for substantially those reasons set out by the district court in concluding that Rodriguez failed to create a genuine issue of fact as to pretext. The extensive and contemporaneous written record of Rodriguez's difficulties in communicating effectively, including the Beecroft incident; Rodriguez's failure to identify a single younger employee with a similarly extensive history of communications problems or with an incident of the magnitude of the Beecroft memo who was treated more favorably than was Rodriguez; and the absence of any evidence of a pattern of adverse treatment of workers over the age of forty leads this court to conclude that no reasonable juror could conclude that RTP's stated reasons for terminating Rodriguez were pretextual.

B.      *National Origin Discrimination Claim*

Rodriguez argues that the district court erred when it dismissed his national origin/race discrimination claim for failure to exhaust administrative remedies. He asserts his claim was properly presented to the EEOC because he checked the appropriate box on the EEOC intake questionnaire and that the claim was not included in the formal charge because of an error committed by the EEOC. He further alleges that although he attempted to amend the charge by filing a written

request including the specifics of this discrimination claim, the EEOC never informed him that he was required to file an additional formal charge. Rodriguez thus argues that he did all he could have reasonably done to bring a formal charge of national origin/race discrimination and that the EEOC had the opportunity to investigate the claim. In the alternative, he appears to argue that his national origin/race discrimination claim is reasonably related to his age discrimination claim because both claims arise from his termination.

"Exhaustion of administrative remedies is a 'jurisdictional prerequisite' to suit under Title VII." *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996). Whether a plaintiff has exhausted administrative remedies is a question of law reviewed *de novo*. *See id*. at 1400 (citing *Vinieratos v. United States Dep't of Air Force*, 939 F.2d 762, 767-78 (9th Cir. 1991)).

To exhaust administrative remedies, a claimant must first file a charge with the EEOC. *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). It is uncontested that Rodriguez's formal charge does not include an explicit claim of national origin/race discrimination. In this circuit, however, "[w]hen an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge." *Ingels v. Thiokol*

*Corp.*, 42 F.3d 616, 625 (10th Cir. 1994) (quotation omitted). Although Rodriguez alludes to this standard in his brief, he has not cited a single case indicating that a national origin/race discrimination claim is like or reasonably related to a claim of age discrimination. In fact, the case law reveals that the opposite is true. *See, e.g.*, *Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 675 (9th Cir. 1988) (holding that plaintiff's age discrimination claim was barred by failure to add it to an EEOC charge of national origin/race discrimination); *Castro v. United States*, 775 F.2d 399, 403 (1st Cir. 1985) (holding that plaintiff's claim of national origin/race discrimination was barred where only age discrimination claims were raised in agency proceedings).

Rodriguez misrelies on *Sickinger v. Mega Systems, Inc.*, 951 F. Supp. 153 (D. Ind. 1996), for the proposition that the inclusion of a national origin/race discrimination claim in his intake questionnaire is sufficient to exhaust his claim. In *Sickinger*, the court held that a retaliatory discharge claim set out in an intake questionnaire which was "like or reasonably related" to the underlying claims of sex discrimination and harassment was sufficiently exhausted because "the EEOC affirmatively misled the Plaintiff into believing she had properly filed her retaliatory termination claim." *Id.* at 155, 158. The record in this case, however, belies Rodriguez's assertion that a representative of the EEOC somehow led him astray as to the filing of his national origin/race discrimination claim. As set out

-13-

above, after Rodriguez received a copy of the formal charge, he sent a letter to the EEOC investigator, Wendy Reiner, asking that she "amend [his] charge to include national origin as a basis of discrimination." Reiner immediately responded to Rodriguez's letter by noting that she could not draft an amended charge until she received additional information from Rodriguez. Attached to Reiner's letter was Rodriguez's request to amend the charge, upon which Reiner had made numerous notations regarding the additional information she would need to draft the amended charge. The record does not contain any indication that Rodriguez ever responded to Reiner's letter. In light of the record, Rodriguez's assertion on appeal that he was never informed of the need to file an additional formal charge to pursue a claim of national origin/race discrimination rings particularly hollow. Upon *de novo* review, we conclude that the district court was correct in ruling that Rodriguez failed to exhaust his national origin/race discrimination claim.

In light of Rodriguez's failure to exhaust his national origin/race discrimination claim, the district court erred in granting summary judgment in favor of RTP, instead of dismissing the claim for lack of subject matter jurisdiction. Although the Supreme Court has held that the failure to file a timely charge with the EEOC does not deprive the courts of jurisdiction, *Zipes v. Trans World Airlines, Inc. Independent Federation of Flight Attendants*, 455 U.S. 385 393 (1982), this court has concluded that the actual filing of a charge, whether

timely or not, is a jurisdictional prerequisite. *Jones*, 91 F.3d at 1400 n.1.

Accordingly, while a district court may maintain jurisdiction over a Title VII

claim that arises from an untimely filed charge, it may not maintain jurisdiction

over a Title VII claim for which a charge has not been filed. *Id.* Because this

court is bound by the prior precedent of the Tenth Circuit, filing a charge with the

EEOC is a jurisdictional prerequisite to filing a Title VII action in federal court.

*In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993); *Jones*, 91 F.3d at 1400-02.

Because the district court lacked jurisdiction over Rodriguez's national

origin/race discrimination claim, we must remand the matter to the district court

so that it may vacate its grant of summary judgment in favor of RTP and dismiss

the claim for lack of jurisdiction.


## V. CONCLUSION

For those reasons set out above, this court **affirms** the district court's grant

of summary judgment to RTP on Rodriguez's age discrimination claim. Because,

however, Rodriguez's failure to file a charge of national origin/race

discrimination with the EEOC deprived the district court of subject matter

jurisdiction, this court **remands** that portion of the district court order granting

summary judgment to RTP on Rodriguez's national origin/race discrimination

-15-

claim to the district court so that it can vacate its grant of summary judgment in favor of RTP and to dismiss the claim for lack of jurisdiction.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge